## SKIPPER–BIVENS OIL CO. et al. v. STATE.

### No. 8622.

Court of Civil Appeals of Texas. Austin.

March 30, 1938.

Rehearing Denied April 27, 1938.

Felts, Wheeler & Wheeler, of Austin, for plaintiffs in error.

Wm. McCraw, Atty. Gen., and Wm. C. Davis, Asst. Atty. Gen., for the State.

McCLENDON, Chief Justice.

Appeal (by writ of error) from a judgment in favor of the State, confiscating 10,000 barrels of oil alleged and found to be "illegal," in that it was produced in violation of the conservation laws of the State, and the rules of the Railroad Commission promulgated thereunder.

The finding that the oil was illegal is not attacked. The only questions urged are that the act under which the suit was brought, H.B. 581, Acts 44th Leg. Reg.Sess. c. 246, Vernon's Ann.Civ.St., art. 6066a, § 10, is unconstitutional in so far as applied to the oil in question on two grounds, substantially stated as follows:

(1) The oil being in steel storage tanks, and being a useful article and commodity in commerce, and not inherently vicious, it was not in fact a nuisance and could not be made so by legislative fiat.

(2) The oil was produced prior to the effective date (May 11, 1935) of the act; therefore, as to it the act was retroactive and void.

These same questions were urged in Dyer v. R. R. Comm., Tex.Civ.App., 115 S.W.2d 1020, motion for rehearing in which is this day overruled.

Probably no legal principle is more firmly grounded in our jurisprudence than that the State has power to conserve the natural resources within its boundaries, and to enact such laws, and through properly constituted legislative agencies promulgate such regulations thereunder, as may be necessary or appropriate to effectuate that objective. The validity of the act in question, both generally and as applied to the case at bar, seemed so plain to us that we thought it necessary only to cite some leading authorities.

Beginning with the Oxford Oil Company Case, Oxford Oil Co. v. Atlantic Oil Co., in the federal court, D.C., 16 F. 2d 639, affirmed, 5 Cir., 22 F.2d 597, certiorari denied, 277 U.S. 585, 48 S.Ct. 433, 72 L.Ed. 1000, and the Bass Case, Railroad Comm., v. Bass, 10 S.W.2d 586. in this court, the oil well spacing rule (rule 37) and beginning with the Danciger Case, Danciger Oil & Refining Co. v. Railroad Comm., Tex.Civ. App., 49 S.W.2d 837, the proration orders of the Commission have been uniformly upheld. The holdings in the Bass and Danciger Cases were expressly approved by the Supreme Court in Brown v. Humble Oil Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393.

In Culver v. Smith, Tex.Civ.App., 74 S.W.2d 754, the act, Vernon's Ann.Civ.St., art. 6049c, § 5, requiring all engaged in oil production and processing to make sworn reports of their business and submit their records to the Commission for inspection was upheld. In State v. Blue Diamond Oil Corp., Tex.Civ.App., 76 S.W. 2d 852, this act was held to authorize the Commission to require tenders for the movement of oil and oil products. Under this act and the supplementary act of March 9, 1934, H.B. 99, Acts 1934, 2d Called.Sess., c. 45, Vernon's Ann.Civ.St. art 6049c, § 5, the Commission entered an order on December 5, 1934, requiring inventories of all oil and oil products in the East Texas field. These orders were upheld in a number of cases in this court. Railroad Commission v. Burnham, Tex. Civ.App., 80 S.W.2d 496; Railroad Comm. v. Tyler Oil Co., Tex.Civ.App., 80 S.W. 2d 500; Railroad Comm. v. Linzie Refining Co., Tex.Civ.App., 80 S.W.2d 504; Railroad Comm. v. Archer, Tex.Civ.App., 80 S.W.2d 506; Railroad Comm. v. Bradshaw, 'Tex.Civ.App., 80 S.W.2d 508; Railroad Comm. v. Primrose Petroleum Co., Tex.Civ.App., 80 S.W.2d 509; Railroad Comm. v. Phoenix Refining Co., Tex.Civ. App., 80 S.W.2d 510. Also, see Railroad Comm. v. Morgan, Tex.Civ.App., 92 S.W. 2d 1131.

The ultimate objective of the spacing and proration regulations was to conserve the oil. The other acts and regulations thereunder were designed as enforcement measures; the difficulties incident to which are matters of history.

The effect of these acts and regulations, prior to the act in question, was to constitute oil produced or transported in violation thereof illegal. This was expressly held in the above cases decided February 16, 1935 (some three months before the act in question became effective). 80 S.W.2d pages 496–512. Such illegal oil could not lawfully be transported, sold, or moved in commerce. The holdings in these cases have been uniformly followed both in the state and federal courts.

For all practical purposes, and therefore logically, such oil constituted a nuisance in fact, independently of any legislative declaration upon the subject.

It is so well established as to be now axiomatic in the law that legislative bodies are not endowed with alchemistic powers, and cannot by saying so change a thing into something which in fact it is not. But they do have the power to prescribe rules of human conduct, and legislate in the interest of the general welfare, which includes, as already stated, the conservation of natural resources. Such powers include all incidental powers necessary or appropriate to the general powers. So that while the Legislature may not transform a useful, nonharmful article of commerce into a nuisance, it may lawfully declare anything a nuisance and subject it to confiscation which is produced or made use of in violation of its laws. This general principle is so old and well established that it hardly requires citation of authority. Familiar illustrations are found in various statutes and acts of Congress subjecting to confiscation vehicles, vessels, and other property used in the production or transportation of illicit liquor, narcotics, violation of the revenue, customs, neutrality laws, etc.

While conceding, as they must concede, the power of confiscation in these classes of cases, appellants contend that the purpose of such confiscation is to prevent the property from being further used in violation of law; that oil, once the bar of illegality is removed by its sale under the act and it passes into the channels of commerce, is no longer susceptible of being accessory to any violation of the conservation laws, Vernon's Ann.Civ.St. art. 6049c. The point is not well taken. Vessels and vehicles are per se just as useful as articles of commerce, and as inherently harmless as oil. Their potential illicit use is no different after than before sale under confiscation proceedings. Confiscation is merely an additional penalty for and consequent additional de-

terrent to the violation of law; and is resorted to upon the theory that other penalties and deterrents are not deemed adequate. The only alternative to confiscation would be destruction of the property, a course hardly warranted in case of articles lawfully useful and inherently harmless, as distinguished from articles which are not lawfully useful, such as those employed in the illicit manufacture of intoxicants, etc. A complete analogy to illegal oil is found in smuggled goods.

But it is further urged the purging of the oil of its illegality (sometimes referred to as "glorifying" or "sanctifying" it) through moving it into commerce under judicial sale serves to defeat the very purpose of the proration laws, rules, and orders, in so far as they are predicated upon market demand; in that, to the extent of the quantity so confiscated, the supply of marketable oil is thereby increased, and market demand thereby and to that extent exceeded. This, however, is not necessarily so. Limitation of supply to market demand can as effectually be accomplished with as without confiscation and sale. Moreover, the selection of means to effectuate a proper legislative objective is exclusively legislative in character. And besides appellants as violators of the laws are hardly in position to appraise or call in question the effectiveness of means adopted by the State to enforce such laws.

It is a matter of common knowledge that in the earlier years of production in the East Texas Field, conservation laws were flagrantly violated, and the State was faced with the serious and difficult problems both of enforcing its laws and of disposing of the "illegal" oil that was accumulating. We have already discussed the enforcement purpose of the confiscation act. As regards disposition of the illegal oil, there were but three possible alternatives to confiscation: (1) Destruction, which as we have seen would hardly be justified, if in fact authorized; (2) pumping the oil back into the natural reservoir, which, if possible, was hardly practical; and (3) leaving the oil permanently where it was, in which condition it constituted a nuisance per se in every proper sense of the term. The selection of adequate means to the desired end was, as already stated, purely a legislative function, and beyond the powers of the courts to control, so long as the Legislature did not exceed its powers. The means adopted were deemed appropriate by that branch of government. The courts are in no position judicially to know (if in fact such were the case) that the means (confiscation) bore no reasonable relation to the objective sought; and for that reason, if for no other, the legislative action is not subject to judicial review.

Appellants also seek to distinguish the revenue laws from conservation laws, on the ground of the great public importance of the State's revenues. If protecting the State's revenues is more important to the public than conserving its natural resources, the difference is one only of degree. The instant act vitally affected one of the greatest industries and one of the greatest natural resources of the State.

From what has already been said, it follows that the confiscation act, Vernon's Ann.Civ.St. art. 6066a, was not unconstitutional as being retroactive with respect to already existing illegal oil. It merely afforded a remedy for the abatement of an existent nuisance.

In a recent well-considered case by the federal Circuit Court of Appeals of this circuit, all of the above questions were necessarily involved, and most of them expressly passed upon. Thompson v. Spear, 91 F.2d 430, certiorari denied by the Federal Supreme Court, 58 S.Ct. 409, 82 L.Ed. ——.

The trial court's judgment is affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

From the expression in our opinion that "confiscation is merely an additional penalty for and consequent additional deterrent to the violation of law," appellants argue that it follows that the confiscation act was retroactive and therefore in violation of the Constitution, art. 1, § 16, as applied to existent illegal oil. The quoted expression is inaccurate as applied to the situation at bar. This we think clearly appears from the other portions of the opinion. The statutes and Commission rules, violation of which constituted the oil illegal, created a situation which in effect made the oil contraband and a nuisance, independently of the confiscation statute. Hence our holding that this statute merely provided the procedure for abatement of an existent nuisance.

The motion is overruled.

Overruled.