**STATE v. HUMPHREY et al.**

No. 3914.

Court of Civil Appeals of Texas. Beaumont.

Dec. 23, 1941.

Rehearing Denied Jan. 14, 1942.

Gerald C. Mann, Atty. Gen., and Cecil C. Rotsch and Billy Goldberg, Asst. Attys. Gen., for appellant.

Elbert Hooper and Harris Toler, both of Austin, for appellees.

O'QUINN, Justice.

This suit was filed July 8, 1940, by the plaintiff, the State of Texas, against the defendants, Thomas D. Humphrey and Angus Spear and wife, Winnie Spear, for $3,134.78 in gross production oil taxes, penalties and interest, alleged to be due under the terms of Articles 7057a and 6032, Vernon's Annotated Revised Civil Statutes of Texas, by virtue of the production of oil taken from the earth by the defendants during January and February, 1935.

This case involves a construction of the "gross production oil tax" statutes, to wit: said Article 7057a, and Article 6032, V.A.R. Statutes of Texas (H. B. 43rd Leg., 2nd C. S.1934), which were in effect at the time the oil in question was produced; and it also involves a construction of the "unlawful oil forfeiture" statute, to wit: Article 6066a of Vernon's Annotated Revised Civil Statutes of Texas (H. B. 581, Reg.Sess. 44th Leg. 1935), which did not go into effect until May 11, 1935, three months after the production of the oil had occurred and the tax thereon had accrued.

It was alleged, and the undisputed evidence showed, that during the times involved in this lawsuit the defendant Thomas D. Humphrey was the owner of a 7/8 leasehold estate, including 7/8 of all of the oil in the land, in a 20.32 acre tract of real property in Gregg County, Texas, and the defendants, Angus Spear and wife, Winnie Spear, were the owners of a 1/8 royalty estate, including 1/8 of all of the oil in the land, and also the fee simple title, in said 20.32 acre tract; and that during said times the defendants operated an oil well on said land. It was alleged and shown without contradiction that during January and February, 1935, the defendants took from the earth by means of said oil well on said land 102,000 barrels of oil, and that said oil was placed by the defendants in steel storage tanks that were under their control; and it was also alleged and shown that soon thereafter the Comptroller of Public Accounts demanded that the defendants pay a gross production oil tax at the rate of 2⅛ cents per barrel under the terms of said Article 7057a and 6032, then in effect, on and because of the production of said oil, but that said tax had not been paid.

The plaintiff, State of Texas, contended that at the time of the filing of the suit the defendant owed, because of the production of said oil, $2,167.50 in taxes; $216.75 in penalties; and $750.53 in interest, a total of $3,154.78, and that judgment should be rendered against the defendant Humphrey for $2,742.93 (7/8 of the total) and against the defendants Angus Spear and his wife, Winnie Spear, for $391.85 (1/8 of the total), and for foreclosure of the plaintiff's statutory tax lien on the 20.32 acre tract of land to satisfy the judgment.

The defendants did not controvert by evidence any of the plaintiff's allegations or evidence, but they sought to excuse their failure to pay the taxes on the ground that

said oil had been produced illegally, that is without a proper permit from the Railroad Commission of Texas, and that the "unlawful oil forfeiture statute, to wit: Article 6066a, went into effect three months after said oil was produced and said taxes accrued, and that said oil was seized by the State and forfeited under and by virtue of said statute, which should be considered in passing upon the "production tax" statute, whereby, it is insisted, the oil having been illegally produced for want of permit from the Railroad Commission, was immediately forfeited to the State. It is true that the oil was illegally produced for want of a permit from the Railroad Commission to locate the well and produce the oil, yet when the well and the unlawful oil stored in tanks were discovered, the State did not ipso facto undertake to seize and sell the oil, but proceeded through the Attorney General of Texas to file suit in the proper court and obtain judgment forfeiting said oil, and then seized and sold same under order of court. The gross production tax on said oil was not paid, hence this suit.

The suit was tried to the court without a jury, and judgment rendered for the defendants, appellees, that the state take nothing and that defendants go hence with their costs. The State brings this appeal from said judgment. We shall refer to the State, appellant, as plaintiff, and to appellees, Thomas D. Humphrey, and Angus Spear and his wife, Winnie Spear, as defendants.

That the defendants produced 102,000 barrels of oil from the land in which defendant Humphrey owned a 7⁄8 leasehold interest in the oil, and defendants Angus Spear and his wife, Winnie Spear, owned a 1⁄8 royalty interest, is without dispute, therefore the moment the oil was produced said defendants became liable under Article 7057a and 6032 Vernon's Ann. Civil Statutes, for a tax of 2 1⁄8 cents per barrel, together with penalties and interest, amounting to $3,134.-78, the defendant Humphrey being liable for 7⁄8 of said tax, and the defendants Angus and Winnie Spear being liable for 1⁄8 of said tax, because Humphrey owned a 7⁄8 leasehold estate, including 7⁄8 of the oil in the land (a 20.32 acre tract in Gregg County), and defendants Angus and Winnie Spear owned 1⁄8 royalty estate, including 1⁄8 of the oil in said land, and also the fee simple title to the said 20.32 acres of land. During the months of January and February, 1935, they operated an oil well on said land and took from said land 102,000 barrels of oil which they stored in steel tanks. Upon these facts becoming known to the Comptroller, he demanded that the defendants pay the taxes due the State under Article 7057a, and 6032, V.A.C.S., which they failed and refused to do. Further demand for the payment of said taxes was made of defendants at the time of the trial of the suit, but same were not paid.

As we understand defendants' brief, they nowhere attack the validity of the laws under and by virtue of which this suit was brought and sought to be maintained. The statutes are constitutional in all their parts. Skipper-Bivens Oil Co. v. State, Tex.Civ.App., 115 S.W.2d 1016, writ denied. The tax levied by Article 7057a is an occupation tax on oil produced. Sec. 2, Id. The moment the oil was produced the tax accrued—that is the moment oil is taken from the ground, a tax measured by the number of barrels of oil taken accrues, and under the statute is payable the 15th of the next month. This tax does not depend on what becomes of the oil, whether it is sold, stolen, or destroyed, because the tax is not a gross proceeds tax, a sales tax, or a transfer tax, but is an occupation tax, so denominated by part (1) of Section 2 of Article 7057a, R.S. Also, part (2) of said Sec. 2 of said Article provides: "(2) The tax hereby levied [part 1, Sec. 2, Art. 7057a, supra] shall be a liability of the producer of oil and it shall be the duty of such producer to keep accurate records of all oil produced, making monthly reports under oath as hereinafter provided." Defendants utterly ignored this requirement of the statute, but stored the oil away in steel tanks, and the only record herein reflected to have been kept was the secret knowledge of defendants that they had the oil, and the State was minus its taxes which they were duty bound to pay.

The State had the right to tax the occupation of producing the oil in question without regard as to whether said oil was produced lawfully, or in an unlawful manner. Defendants did not undertake by evidence to deny the proof that the 102,000 barrels of oil in question were produced during January and February, 1935, by the defendants from land owned by them; but they proved that said oil was unlawfully produced in excess of the amount of production allowed by the Railroad Commission's orders. As we have already stated, the tax

levied under Articles 7057a and 6032, R.S., is an occupation tax, and accrued the moment the oil was produced. Whether it was produced lawfully or in an unlawful manner makes no difference insofar as liability for the tax is concerned. In 4 Cooley on Taxation, 4th Ed., 3397, it is said: "An occupation tax is collectible without regard to whether the owner has operated under or in defiance of public regulations as to license. It is no defense to an action to collect a privilege tax that the business upon which the tax is assessed is illegal."

In Brunswick-Balke-Collender Co. v. Meckenlenburg County, 181 N.C. 386, 107 S.E. 317, 319, the Supreme Court of North Carolina said: "The statute imposing the tax, in our opinion being a valid law, the obligation to pay is absolute, and the same is collectible whether the owner has operated under or in defiance of the public regulations as to license. The authorities so hold, and we do not understand that appellant desires to question this position."

The case of Carpenter v. State, 120 Tenn. 586, 113 S.W. 1042, supports the rule. 22 L.R.A.,N.S., 949, in a note says: "The weight of authority supports the conclusion reached in the above case, that it is no defense to an action to collect a privilege tax, that the business upon which the tax is assessed is illegal." Numerous decisions are cited in support of this rule.

The Attorney General of Texas, in Opinion No. O—182, on February 9, 1939, had this to say:

"It is our belief that that part of paragraph 12 (of Article 7057a) quoted above places the primary liability for these taxes on the producers; and the producer in this case is the one from whom the oil was confiscated. As soon as the party in question became a producer, that is, had produced the oil, the liability for the tax became fixed on that person, and it made no difference as to what happened to the oil. The tax in question is a tax on the occupation, the act of producing the oil, such being the holding in the case of Group No. 1 Oil Corporation v. Sheppard [Tex. Civ.App.] 89 S.W.2d 1021, 1024, which involved the statute in question, and in which the court said: 'Nor is the tax levied on the oil in place. The tax is levied on the business or occupation of producing the oil.'

"The fact that this oil was produced in an illegal manner should not excuse the producer from the liability for the tax. In these instances the law will not permit a party to profit by his own wrong."

In the case of Skipper-Bivens Oil Co. v. State, Tex.Civ.App., 115 S.W.2d 1016, 1019, relative to the illegal production of oil, the court said: "And besides appellants as violators of the laws are hardly in position to appraise or call in question the effectiveness of means adopted by the State to enforce such laws."

Numerous decisions from various jurisdictions could be cited announcing and supporting the rule.

█ Forfeiture of the unlawful oil in question, and the sale of same under Article 6066a, V. A. C. S. of Texas, by which the State received the proceeds from said sale, did not operate to relieve the defendants of the tax liability for the production of said oil from the earth for gross production oil taxes under Article 7057a and 6032, R.S.1925. As stated above, the State of Texas filed forfeiture suit under Article 6066a against the oil in question, and said oil was sold and the proceeds of said sale were delivered to the State Treasurer. Appellants contend that the forfeiture and sale of the oil, and the receipt of the proceeds of the sale by the State, operated as a satisfaction of defendants' tax liability which accrued when the oil was produced. This contention is without force. A reading of the tax statutes, Articles 7057a and 6032, and the forfeiture statute, Article 6066a, shows that the Legislature did not intend for the statutes to operate so that the proceeds of a forfeiture sale could be applied either actually or impliedly, to the satisfaction of the tax liability. We think it clear that the unlawful forfeiture statute, Article 6066a, was intended to operate entirely apart from the gross production statutes, Articles 7057a and 6032. This, we think, conclusively appears from the articles themselves. Sec. 2 (subdivision 7) of Article 7057a specifically provides that one-half of the tax collected shall be paid to the State Treasurer to be credited to the Available School Fund, and the other half shall be placed to the credit of the General Fund of the State, while Article 6066a, Sec. 10(c), provides that all the money realized from the sale of unlawful oil, after paying the costs of suit to collect, shall all be credited to the General Revenue Fund. So it conclusively appears that none of such money

can or could be used to liquidate any amount owed by the producer as an occupation tax for the production of the oil.

█ If we correctly understand defendants, they take the position that the fact that the oil in question was forfeited by the State is conclusive proof that the defendants had no interest in the oil at the time it was produced, and so could not be liable for a production tax because of its production. We think the contention is without merit. Section 2, Subdivision 6, of Article 7057a, provides, in part as follows: "Sec. 2 * * * (6) The tax herein levied shall be borne ratably by all interested parties." The words "interested parties" in the statute mean the person in possession of the oil claiming it as his own. A person does not have to have a clear merchantable title but need only have apparent legal title to be liable for taxes levied against the owner of the property. 61 C.J. § 182, p. 207. However, here the defendants had perfect title to the land and oil, and were the sole owners at the time the oil was produced.

█ The defendants seemed to have had a theory in the trial court to the effect that when the forfeiture proceeding under Article 6066a was completed it divested the defendants of all interest in the oil and that such divesture related back in such a manner that the defendants did not have any interest at the time of production. The forfeiture judgment certainly divested the defendants of their title in the oil, but it did not relate back so as to relieve them of liabilities already incurred, to wit, the production tax which accrued when the oil was removed from the soil, and the forfeiture could not occur until the oil was removed. Title to the oil did not vest in the State until forfeiture proceedings were had and judgment so decreeing was taken, which was some time later. Certainly title to the oil remained in defendants until same was divested by the forfeiture proceedings and sale in forfeiture was had. The contention of defendants as to when title by forfeiture took the title to the oil out of defendants is without merit. Texas v. Donoghue, 302 U.S. 284, 58 S.Ct. 192, 82 L.Ed. 264. Moreover, the fact that said oil was produced in violation of a Railroad Commission order; that is, was produced in excess of the amount allowed by law; that said oil was seized, forfeited and sold by the state and the whole of the sale proceeds placed to the credit of the State, did not release or in any manner affect the defendants' liability for the taxes due on the production of said oil.

From what we have said, it follows that the judgment of the trial court should be reversed and judgment here rendered for the plaintiff, appellant, the State of Texas, for the several taxes, penalties, and interest for which it sues, together with costs of suit, and it is so ordered.

Reversed and rendered.