[S.F. No. 23591. May 10, 1977.]

SCOTT BEAMER et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

468

## COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Appellant.

Aiken, Kramer & Cummings and John A. Harkavy for Plaintiffs and Respondents.

## OPINION

**MOSK, J.**—We consider here the deductibility under Revenue and Taxation Code section 17204[1] of certain taxes paid to the State of Texas by respondent taxpayers. To make this determination we must resolve two issues: (1) the proper construction of section 17204, which enumerates those taxes paid to other authorities' that are deductible from California personal income tax, and (2) whether the Texas taxes are "on or according to or measured by income or profits." (§ 17204, subd.

---

[1] All references are to the Revenue and Taxation Code unless otherwise indicated.

(c)(2).) We conclude that the Texas taxes cannot be characterized as taxes on income, and hence are deductible.

The facts are brief and undisputed. Taxpayers, residents of this state, each own an interest in an oil and gas field located in the State of Texas and receive royalty income from the oil and gas produced. Texas has enacted what it denominates an "occupation tax" on the business of producing natural gas and crude petroleum; the amount of each tax is a specified percentage of the "market value" of the oil and gas "as and when produced," and it is levied on all producers and purchasers of oil and gas in Texas. It is the deductibility of these taxes under section 17204 which is in issue here.

For the years in question, 1970 through 1972, taxpayers reported the royalty payments they received as income on their California personal income tax returns and claimed deductions under section 17204 for the Texas occupation taxes paid. When the Franchise Tax Board (hereinafter board) disallowed these deductions, taxpayers paid the deficiencies under protest, filed claims for refunds, and, in due time, instituted this refund action. Summary judgment was granted for taxpayers, and the board appealed.

I

The initial issue for our determination is whether taxes on or measured by income are made deductible by the language of subdivision (a) of section 17204 when incurred "in carrying on a trade or business" or "for production of income," notwithstanding the apparent declaration in subdivision (c)(2) that taxes "on or according to or measured by income or profits" are not deductible.[2] For purposes of this issue we assume the Texas taxes are "income" taxes within the meaning of subdivision (c)(2). Taxpayers contend that such taxes are deductible under the literal language of the last clause of subdivision (a), notwith-

---

[2]Section 17204 provides:

"(a) Except as otherwise provided in this section and Section 17205, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

"(1) State and local, and foreign, real property taxes, less any amounts received from the state pursuant to the authorization contained in Section 1d of Article XIII of the Constitution;

"(2) State and local personal property taxes;

"(3) State and local general sales taxes;

"(4) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels; and

In addition, there shall be allowed as a deduction state and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in

standing subdivision (c)(2), when incurred as a business expense or for production of income. For convenience we shall refer to the last clause of subdivision (a) as the "fifth category" of deductible taxes.

The basis for taxpayers' contention is their belief that the latter category, unlike the four which precede it, is not conditioned by the opening caveat of subdivision (a), which declares that "Except as otherwise provided in this section and Section 17205, the following taxes shall be allowed as a deduction . . . ." Taxpayers maintain the opening caveat does not operate to trigger subdivision (c), which prohibits the deduction of certain taxes including those on "income," when the tax to be deducted comes within the fifth category. In making this argument, taxpayers assert that by its literal words the opening caveat applies only to "the following taxes," which, according to taxpayers, are only clauses (1) through (4). They seek to buttress this contention by pointing to the language of the fifth category which provides for deductible taxes "In addition" to the four which precede it. Finally, taxpayers reason that the Legislature would have simply labeled the fifth category as "(5)" if it had intended the opening caveat to modify it.

While subdivision (a) is not a model of statutory clarity, we cannot read it as taxpayers suggest. Rather, for the reasons stated below, we believe subdivision (a) enumerates five categories of deductible taxes, all of which are modified by the provisions of subdivision (c) and by section 17205 if applicable.

To begin with, even were we to accept the view that the fifth category is entirely unaffected by the opening caveat, it would not lead to the conclusion that taxpayers desire. To hold the fifth category severable from the opening caveat would merely create an independent clause in subdivision (a); it would in no way give precedence to that clause over the explicit language of subdivision (c) directing that certain types of taxes, including those on or measured by income or profits, are *not*

carrying on a trade or business or an activity described in Section 17252 (relating to expenses for production of income).

"(c)  No deduction shall be allowed for the following taxes:

"(1)  Taxes paid or accrued to the state under this part [i.e., personal income tax];

"(2)  Taxes on or according to or measured by income or profits paid or accrued within the taxable year imposed by the authority of:

"(A)  The government of the United States or any foreign country;

"(B)  Any state, territory, county, city and county, school district, municipality, or other taxing subdivision of any state or territory; . . ."

We omit subdivision (b) which is definitional and procedural and also the balance of subdivision (c), neither of which relates to the issues before us.

deductible. Thus to accept taxpayers' view would create an inconsistency in the statute: subdivision (a) would purport to allow the very deduction which subdivision (c) expressly denies. Because courts should avoid reading a statute to create internal conflict, if possible, we reject taxpayers' construction of section 17204.

To determine the proper meaning of the section, we must of course read it as a whole. When we do so, it appears to us that subdivision (a) creates four specific categories of deductible taxes and one category which can probably best be described as a "catchall," but that all five are modified by the opening caveat and therefore limited by the provisions contained in subdivision (c). We are primarily led to this conclusion by the following reasoning: the caveat would be surplusage unless there were a potential conflict between subdivisions (a) and (c); the only such conflict which appears on the face of the statute is between the fifth category and the income tax clauses of subdivision (c) (i.e., subd. (c)(1), (2), (3));[3] accordingly, the caveat must apply to the fifth category of subdivision (a).[4]

We are confirmed in our reading of the statute by an analysis of its legislative history. As discussed below, such an analysis appears to shed light on the Legislature's intent, which is, as always, our touchstone for the proper construction of a statute. The importance of discerning the Legislature's purpose is not diminished when a tax statute is at issue.

We first note that when enacted in 1943, former section 17305, the predecessor to section 17204, provided generally for the deduction in computing California personal income tax liability of all taxes except those specifically enumerated to be nondeductible. Among those made nondeductible were "(b) Taxes on or according to or measured by income or profits . . . imposed by the authority of (1) The Government of the United States or any foreign country . . . [and] (2) Any State, Territory, county, city and county, school district, municipality, or other taxing subdivision of any State or Territory." (Stats. 1943, ch. 659, § 1, p. 2364.) The crucial portion of this language has been retained through several revisions and amendments, and is found verbatim in subdivision (c)(2) of the present statute. (Fn. 2, *ante.*)

---

[3]The taxes described in categories (1) through (4) of subdivision (a)—real property, personal property, general sales, and fuel taxes—are rarely, if ever, measured by income or.profits.

[4]In addition, the fifth category is grammatically one of "the following taxes," because the punctuation which precedes it—"; and"—suggests a sequential relation to the four clauses coming before it.

We further observe that when renumbered in 1955, section 17204 was rewritten, adopting verbatim in subdivision (a) the language of its then recently enacted counterpart in the federal tax law, section 164 of the Internal Revenue Code of 1954. There was one significant difference, however, between the California and federal statutes: while federal law allowed, as it still does, the deduction of state, local and foreign income and profit taxes (Int. Rev. Code, § 164(a)(3)), California specifically continued to prohibit the deduction of any taxes on or according to or measured by income or profits. (Stats. 1955, ch. 939, § 2, p. 1678.)

The revision of section 17204 which is most significant for purposes of our present inquiry, however, occurred in 1964. Again the Legislature was undoubtedly acting to maintain the conformity of the statute with the language of its federal equivalent, section 164 of the Internal Revenue Code of 1954. In the Revenue Act of 1964 (Pub. L. No. 88-272, 78 Stat. 19 (Feb. 26, 1964)), the Congress substantially rewrote section 164, changing its basic format. Where it previously had been a general rule allowing the deduction of taxes except those enumerated, section 164 became an enumeration of the specific categories of taxes which could be deducted. At the same time the Congress added, as a separate sentence of subdivision (a): "In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income)."

The House provided the following technical explanation for the insertion of this language: "The last sentence of section 164(a) allows as a deduction State and local, and foreign, taxes not otherwise described in section 164(a) which are paid or accrued within the taxable year in carrying on a trade or business or in carrying on an activity described in section 212 of the code (relating to expenses for the production of income). Such taxes which are now deductible under section 164 remain so; *those which are not presently deductible under section 164 are not made deductible by the amendment."* (Italics added.) (H.R.Rep. No. 749, 88th Cong., 1st Sess., pp. A41-A42 (1963).)

That our Legislature was closely following the revisions to the federal statute when, in 1964, it rewrote section 17204 in substantially its present form, is evident from the immediate enactment of the same change in format and the verbatim adoption of much of the same language as contained in the federal statute. This parallelism is underscored by the

fact the federal language referring to a "preceding sentence" is carried over to the California statute, notwithstanding that our Legislature drafted no such preceding sentence, at least under customary rules of punctuation. Because we believe the revisions of section 17204 were thus based on recent changes in the federal statute, we deem them to have been enacted with the same intent. (*Holmes* v. *McColgan* (1941) 17 Cal.2d 426, 430 [110 P.2d 428]; *Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499].) That intent, as shown by the house report, was only to clarify the interrelationship of this section providing for the deduction of certain taxes with the sections providing for the deduction of business expenses: to paraphrase the house report, there was no intention in adding the language we have denominated the fifth category to make deductible any taxes not then deductible under the statute. At the time the language in issue was enacted, the California statute explicitly provided that no taxes "on or according to or measured by income" could be deducted; adding the language of the fifth category was not intended to make them deductible.

Finally, we observe that while the Legislature clearly modelled section 17204 on section 164, it did delete the clause in that section which provided for the deduction of "State and local, and foreign, income, war profits, and excess profits taxes." (Int. Rev. Code, § 164(a)(3).) It strains credulity to believe the Legislature purposefully excised this clause while adopting the balance of subdivision (a) of the federal statute verbatim, save for the change in punctuation, and at the same time intended to allow the deduction of income or profits taxes if they fell within the fifth category.

Therefore, we conclude that the language constituting what we have termed the fifth category of deductible taxes was added to subdivision (a) solely for the purpose of making it clear, when the format of the statute was changed, that those taxes previously deductible as business expenses or as being incurred in production of income would remain so. The Legislature did not intend by this language to alter any existing provisions prohibiting the deduction of certain types of taxes, specifically taxes on or measured by income or profits. For these reasons taxpayers' first argument must be rejected.

## II

■ We must now determine whether the Texas Gas Production Tax (Tex. Tax-Gen., art. 3.01 et seq. (Vernon)) and Texas Oil Production Tax (Tex. Tax-Gen., art. 4.01 et seq. (Vernon)) (hereinafter "the Texas

taxes") are nondeductible by reason of subdivision (c)(2) of section 17204. (Fn. 2, *ante.*) The board contends they are within that subdivision, characterizing them as "taxes on or according to or measured by income or profits" which are imposed by a sister state. Taxpayers, on the other hand, argue the Texas taxes are "privilege-severance-occupation" taxes which are deductible because they are incurred "for production of income" within the meaning of the fifth category of subdivision (a) of the statute.[5] We conclude the Texas taxes are not "on or according to or measured by income or profits," and, therefore, that they can be deducted by taxpayers.[6]

To review the factual setting, taxpayers, as successors in interest to the previous owners who entered an oil and gas lease with a drilling company in 1934, receive royalty income from Exxon Corporation, the current operator of the field of which taxpayers' land is a part. Texas imposes what it designates an "occupation" tax on the "producers" of gas and oil. Royalty owners such as the taxpayers before us are within the term "producers" as defined for each tax, and therefore are liable for the occupation tax on their share of what is produced. The tax is collected for the state by the purchaser, who deducts the amount of the tax from the purchase price of the minerals. Here, Exxon purchases for cash the oil and gas which is taxpayers' share under the lease. The amount of both the tax on producers of gas and the tax on producers of oil is a specific percentage of market value of gas or oil, as the case may be, "as and when produced." Market value for gas is stated to be "the value thereof at the mouth of the well" (Tex. Tax-Gen., art. 3.02) while the market value of oil is defined as "actual market value" (Tex. Tax-Gen., art. 4.02).

■ In ascertaining whether the Texas taxes are on or measured by income, at the threshold we reject as without significance the fact both taxes are denominated "occupation" taxes; our task is to determine their true nature and not to be guided by labels. We note that the Texas Supreme Court similarly disregarded these labels when it examined the nature of the Texas taxes in *Humble Oil & Refining Company* v. *Calvert* (Tex. 1972) 478 S.W.2d 926, 930, a case we discuss below.

■ We can also easily determine that the Texas taxes are not taxes *on* income. Liability for them arises at the wellhead as a tax on producers,

---

[5]The board does not contend the taxes do not fall within the latter category, and we specifically do not reach any determination on that matter.

[6]The taxes are clearly not on or measured by "profits," and the board does not so contend.

and not on the proceeds from the eventual sale of what is produced. In *State* v. *Humphrey* (Tex.Civ.App. 1941) 159 S.W.2d 162, a predecessor occupation tax was imposed on producers of oil despite the ultimate forfeiture to the state of the captured oil because it had been produced without a required license. As taxpayers assert, this ruling demonstrates that the taxes accrue when the mineral is produced, regardless of whether anything further is done. Although making clear when tax liability arises and what is being taxed, *Humphrey* is of no help on the question whether the present taxes are *measured* by income; the amount of the tax was then measured as a flat rate per barrel produced, as distinguished from the present percentage of market value.

■ We now reach the more difficult question of how the Texas taxes are measured. As stated, the statutory measure of the gas tax is market value "at the mouth of the well." The statute further provides that when gas is sold for cash only, as taxpayers do here with both oil and gas, the tax is to be computed on producer's gross cash receipts. In addition, Texas courts have consistently defined the term "market value" in the series of Texas oil and gas occupation tax statutes to be the price for which the producer sells the oil or gas. (*Mobil Oil Corporation* v. *Calvert* (Tex. 1970) 451 S.W.2d 889, 892; *W. R. Davis, Inc.* v. *State* (1944) 142 Tex. 637 [180 S.W.2d 429, 432], *Calvert* v. *Union Producing Company* (Tex.Civ.App. 1966) 402 S.W.2d 221, 225; *Calvert* v. *Union Producing Co.* (Tex.Civ.App. 1953) 258 S.W.2d 176, 179.)

This, then, is the heart of the controversy: the board reasons that because the measure of the tax is, as to these taxpayers, the proceeds from the sales to Exxon which are also the amount of their royalty income, the occupation taxes are in effect "measured by" that income; taxpayers argue, however, that the proceeds from the sales to Exxon constitute gross receipts, and that under general tax law gross receipts from the production of oil and gas are not the same as the gross income from such production.

Taxpayers rely primarily on two sources. First they point to identical tax regulations defining gross income: relevant regulations of both the Franchise Tax Board (Cal. Admin. Code, tit. 18, reg. 17071(c)) and the Internal Revenue Service (Treas. Reg. § 1.61-3(a)(1960)) provide in part that "In a manufacturing, merchandising, or mining business, 'gross income' means the *total sales, less the cost of goods sold . . . .*" (Italics added.) Taxpayers then cite Revenue Ruling 60-344 of the Internal Revenue Service, which states that "in the case of oil and gas producing

properties, 'lifting costs' constitute a portion of the cost of producing the oil and gas and must be subtracted from gross sales in computing gross income for the purpose of determining whether personal holding company income, . . . is at least 80 percent of the corporation's total gross income for a taxable year." According to this revenue ruling, the term "lifting costs" is "usually considered to be synonymous with 'operating costs' and [to consist] of those deductible costs incurred in the production of oil and gas after completion of drilling and before its removal from the property for sale or transportation." (Rev. Rul. 60-344, 1960-2 Cum. Bull. 186.) Because such costs are not deducted in computing the Texas taxes, taxpayers conclude the taxes are not "measured by income."

The board makes two arguments to the contrary. First, it declares the revenue ruling to be inapplicable as relating solely to the computation of the gross income of a personal holding company, a technical concept in federal tax law. While the ruling primarily addresses this question, we are not persuaded that the exclusion of lifting costs in computing gross income is limited to the personal holding company context. We note by its opening paragraph that the revenue ruling purports to speak as well to the issue of the relation between lifting costs and the determination of gross income from oil and gas production generally.[7] We also note, as is shown in the ruling, that the definition of gross income for purposes of the personal holding company computation requires reference to the general definition of gross income contained in section 61 of the Internal Revenue Code of 1954 and the regulations thereunder.

As further confirmation, Mertens embraces our reading of the scope of this ruling and Treasury Regulation section 1.61-3(a). He states: "The terms 'gross income' and 'gross receipts' are not synonymous. 'Gross receipts' is a broader term, including within it receipts which may constitute capital as well as income, and, as shown above, returns of capital may not be taxes." He then cites Revenue Ruling 60-344 and Treasury Regulation section 1.61-3(a) for the proposition that "it is recognized that the cost of goods sold is to be excluded from gross receipts in arriving at gross income." (1 Mertens, Law of Federal Income Taxation (1974) § 5.10, p. 36, fn. 18.1.)

The board also maintains the statement that lifting costs in the oil and gas industry are synonymous with operating costs supports its position

[7]The opening paragraph reads, "Advice has been requested whether 'lifting costs' constitute a part of production costs in the determination of 'gross income' from oil production under the provisions of section 61(a) of the Internal Revenue Code of 1954, relating to the definition of gross income, and section 542(a) of the Code, relating to the definition of personal holding company."

that such costs are no more than ordinary costs of production which, according to the board, are to be deducted from gross income to arrive at taxable ("net") income, rather than to be excluded in computing gross income. This interpretation disregards the federal and state tax regulations discussed above, which define gross income in a mining context to be total sales less costs of goods sold. We are unpersuaded that this definition is not controlling.[8] We believe taxpayers must be treated as in the business of mining in the context of this case because the taxes in issue are imposed on them by Texas as "producers" of oil and gas.

The board's second major contention is that the term "gross income" includes any economic benefit received by a taxpayer. The board appears to argue that the reduction to possession of the oil and gas by taxpayers constituted gross income under that definition. Support for this assertion is said to be *Commissioner* v. *Glenshaw Glass Co.* (1955) 348 U.S. 426 [99 L.Ed. 483, 75 S.Ct. 473], in which the United States Supreme Court stated that the term "gross income" was to be given a liberal construction consistent with the intent of Congress in using this language to exert in this field the full measure of its taxing authority. (*Id.,* at pp. 429-430 [99 L.Ed. at p. 489].) The view of the case, however, is taken somewhat out of context. It dealt with the taxability of treble damages received by the taxpayers, which the court characterized as "undeniable accessions to wealth, *clearly realized,* and over which the taxpayers have complete dominion." (Italics added; *id.,* at p. 431 [99 L.Ed. at p. 490].)

Realization is a term of art in tax law identifying the moment when the receipt of money or property is income for tax purposes. While the types of events constituting realization have been expanded over the years, the requirement that there be such an event before income arises

---

[8]The board points to section 613 of the Internal Revenue Code of 1954, which makes a depletion allowance available to oil and gas producers. This depletion allowance is measured as a percentage of "the gross income from the property." Treasury Regulation section 1.613-3(a) provides: "In the case of oil and gas wells, 'gross income from the property,' *as used in section 613(c)(1),* means the amount for which the taxpayer sells the oil or gas in the immediate vicinity of the well. If the oil or gas is not sold on the premises but is manufactured or converted into a refined product prior to sale, or is transported from the premises prior to sale, the gross income from the property shall be assumed to be equivalent to the representative market or field price of the oil or gas before conversion or transportation." (Italics added.)

We fail to see, however, how this regulation overrides Treasury Regulation section 1.61-3(a). As the above-italicized language suggests, the defined term, "gross income from the property," appears to be relevant only for the purpose of computing the depletion allowance and not to be a general definition of gross income from oil and gas properties.

for tax purposes has been emphasized since the case of *Eisner* v. *Macomber* (1920) 252 U.S. 189 [64 L.Ed. 521, 40 S.Ct. 189, 9 A.L.R. 1570]. The board cites no clear authority, however, stating that the mere reduction of oil and gas to possession constitutes realization of income.

The board relies heavily on *Humble Oil & Refining Company* v. *Calvert* (Tex. 1972) *supra,* 478 S.W.2d 926, to support its contention that the Texas taxes are measured by income; arguably, the case also supports the assertion that the reduction of minerals to possession constitutes realization. The Texas Supreme Court determined that the present Texas oil and gas occupation taxes were "income taxes" for purposes of the federal Buck Act (4 U.S.C. §§ 105-110), which enables states to impose certain specified taxes, including "income taxes," in federal enclaves.

For several reasons we do not find the case persuasive on either point. First, as the Texas court noted, it was "dealing with a particular statutory definition of an 'income tax' in a particular context, and not any sort of common understanding of an 'income tax.' " (*Id.,* at p. 929.) By contrast, we believe that in subdivision (c) of section 17204 we are dealing with "income taxes" as they are commonly understood. Secondly, the Texas court adopted (at p. 929) what is seemingly the broadest definition of income: "The essence of income is an inflow constituting an accretion to wealth, identifiable and measurable in money or money's worth, though not necessarily cash." We first observe this definition contains no mention of the requirement of realization. Further, while this formulation may have been proper in light of clear congressional intent to define income taxes expansively for the purpose of the Buck Act,[9] it is inappropriate in applying our own statute, which discloses no legislative intent to define income so broadly. Instead, we read our statutory language, "taxes on or according to or measured by income," to use the term "income" in the sense of gross income under general tax law as currently operating.

Applying this analysis to the Texas taxes; we conclude they are not measured by gross income. Rather, their measure appears to be the total gross receipts from the sales of the minerals produced; they are

[9]For that purpose an income tax is defined as "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." (4 U.S.C. § 110(c).) Furthermore, the Senate Finance Committee report on the Buck Act states that "The definition of income tax [in the Buck Act] is broad enough to include a sales tax which is measured by gross receipts from sales." (Sen. Rep. No. 1625, 76th Cong., 3d Sess., p. 3 (1940).)

computed as a percentage of "market value," a term which the Texas courts have interpreted to be the price for which the minerals are sold. Under Treasury Regulation section 1.61-3(a) and California Franchise Tax Board Regulation 17071(c), this measure, gross sales receipts, is not the same as gross income, because "lifting costs" incurred in production cannot be deducted. In other words, although a portion of the gross sales receipts used to compute the Texas taxes is the same dollar amount as the royalty income of these taxpayers, the fact remains that the Texas taxes are measured by gross receipts from the sale of all minerals produced on taxpayers' land and not by gross income.

We conclude that the Texas occupation taxes are not "on or according to or measured by income or profits" and, therefore, that their deduction is not prohibited by subdivision (c)(2) of section 17204.

The judgment is affirmed.

Tobriner, Acting C. J., Clark, J., Richardson, J., Sullivan, J.,* and Taylor, J.,† concurred.

**SIMS, J.**†—I concur with part II of the opinion and the decision that the judgment must be affirmed.

I am of the conviction that the Legislature intended that state and local, and foreign, taxes not described in the first four numbered categories of subdivision (a) of section 17204 should be allowed as a deduction whenever they are paid or accrued within the taxable year as an expense of carrying on a trade or business, or as an expense of an activity producing income. I believe that the restriction of paragraph (2) of subdivision (c) of the section is strictly limited to taxes on or according to or measured by net income or profits after the deduction of taxes related to the expenses of carrying on the trade or business or activity, even though such a tax is measured by gross income. I therefore refrain from joining in part I of the opinion and decision. Since I agree with the principles set forth in part II, which is determinative of the case, I refrain from elaborating on my views at this time.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.