[L.A. No. 30781. Mar. 28, 1978.]

NORMAN P. CALHOUN et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Philip C. Griffin and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Norman P. Calhoun and Viola E. Calhoun, in pro. per., for Plaintiffs and Respondents.

## OPINION

NEWMAN, J.—The California Franchise Tax Board (the Board) appeals from a judgment that ordered a refund to plaintiffs (husband and wife) of income taxes, penalties, and interest totaling $9,717. The issues are: Did the trial court err when (1) it granted plaintiffs' summary judgment for six tax years (1956, 1957, 1959 through 1961, and 1963); and (2) it ruled that no collateral estoppel (based on findings in a federal tax case) applied in the state trial of plaintiffs' 1962 liability for state tax?

The Board in 1967 notified plaintiffs that they owed additional taxes for 1956, 1957, and 1959 through 1963. It later obtained part payment of the sum allegedly owed by ordering that funds be withheld from

plaintiffs' bank accounts. Plaintiffs then paid the balance and in 1970 sued when the Board disallowed their claim for refunds.

Plaintiffs moved for summary judgment on the ground that they had paid all federal and state taxes for every year except 1962. The Board's answers to interrogatories revealed that its claim for California taxes was based solely on federal audits for the questioned years and that the amount due was calculated on the basis of "net income per federal audit." On September 27, 1974, the trial court granted partial summary judgment, ordered refunds for all years except 1962, and found that "No fraud exists as to any year. . . ."

Also in 1970, plaintiffs filed a parallel suit in the United States District Court for the Eastern District of California, seeking refund of the federal taxes for 1956, 1957, and 1959 through 1963. The federal jury, by special verdict, found (1) that, as the Internal Revenue Service claimed, plaintiffs had understated their income for each of those years, and (2) that the understatement was fraudulent. The federal court entered judgment against plaintiffs on September 30, 1974.

On October 11, 1974, relying on that federal judgment, the Board raised in the state trial a defense of collateral estoppel (via motion to amend its answer to plaintiffs' motion for summary judgment). Its motion to amend was granted on October 23. Before taking testimony as to the 1962 taxes, however, the trial court ruled that (1) its order permitting the amendment did not supersede its September 27, 1974, order that summarily adjudicated most issues, and (2) the federal judgment had no estoppel effect on the state suit.

Though the Board asserted that it could prove estoppel by establishing that the main issue in this case—the amount of gross income—was an issue already adjudicated in the federal case, the trial court held that there was no estoppel because the method of computing federal taxable income differs from the method for state taxable income. Further, "Items that are taxable for Federal tax purposes are not necessarily taxable for State tax purposes and vice versa, so that the way it could be determined whether a State tax is owing is to have the facts presented to a court and the State tax regulations, interpretations apply to that income, and not have the Federal regulations or the Federal interpretations applied to that income, because it could be a difference, there could be a difference

between what items are taxable for State tax purposes and what items for Federal tax purposes."

The Court of Appeal, agreeing that there was no estoppel, affirmed the holding that plaintiffs were entitled to a 1962 refund. As to the other years, plaintiffs here do not seriously challenge the Court of Appeal's ruling that "the granting of the motion for summary judgment . . . was error and that portion of the judgment . . . must be reversed."

 The doctrine of collateral estoppel, applicable to tax cases as well as other cases, precludes a party's relitigating in the trial of a different cause of action an issue necessarily decided in a previous case. (See *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892]; *Teitelbaum Furs* v. *Dominion Ins. Co.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439].) It appears here that the federal case did decide the issue that must concern us; that is, the amount of plaintiffs' gross income. The federal verdict apparently dealt with the unreported income that the federal audit had disclosed, and the Board based its state assessment on that audit. The trial court here prematurely concluded that estoppel did not apply. The Board had not urged that plaintiffs' federal and state taxes were identical. Rather, it sought to establish that plaintiffs should be estopped from denying or relitigating the amount of their gross income, an issue litigated in the federal trial.

We conclude that the federal and state determinations of gross income were sufficiently identical to warrant an estoppel. As will be shown below, identical words are used in both the federal and the state statutes. "[G]ross income means all income from whatever source derived . . . ." The fact that federal law differs from state law on deductions, for example, is irrelevant to the gross income question; and there are no deduction problems here. Similarly, if issues arise as to amounts includable in "net income" under federal but not state law, simple mathematical calculation will set the state tax on the basis of "gross income."

The federal and state definitions currently read as follows:

Federal

26 United States Code section 61:

"Gross income defined

(a) General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust."

State

Revenue and Taxation Code section 17071:

"Gross income

(a) Except as otherwise provided in this part, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust."

The federal and state opinions that construe "gross income" appear to be in accord and thus reinforce the parallelism of the statutes' words. (Cf. *Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 734 [43 P.2d 291, 98 A.L.R. 1499]; *Beamer* v. *Franchise Tax Board* (1977) 19 Cal.3d 467, 473 [138 Cal.Rptr. 199, 563 P.2d 238]; Spitler, *TRA Comes to California*, L.A. Daily J. Rep. (Jan. 13, 1978) p. 4.)

Accordingly, and also because the Court of Appeal correctly reversed the summary judgment as to years other than 1962, the trial court's judgment as to all the years in question is reversed.

■ We note that an appeal from the federal judgment is now pending in the Ninth Circuit Court of Appeals. The federal rule is that "a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition." (*Martin* v. *Martin* (1970) 2 Cal.3d 752, 761 [87 Cal.Rptr. 526, 470 P.2d 662], citing *Stoll* v. *Gottlieb* (1938) 305 U.S. 165, 170 [83 L.Ed. 104, 107-108, 59 S.Ct. 134], and related California cases; see too *Levy* v. *Cohen* (1977) 19 Cal.3d 165, 172-173 [137 Cal.Rptr. 162, 561 P.2d 252].)

A federal judgment is as final in California courts as it would be in federal courts (*Martin, supra,* 2 Cal.3d at p. 761), and the Board thus correctly relies on the judgment that followed the trial. We need not now decide questions that may arise if plaintiffs are successful in their ninth circuit appeal.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Manuel, J., concurred.

Respondents' petition for a rehearing was denied April 27, 1978.