[Civ. No. 59021. Second Dist., Div. Three. Jan. 26, 1981.]

MCA, INC., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Loeb & Loeb, Andrew S. Garb and John S. Warren for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

OPINION

POTTER, Acting P. J.—Plaintiff MCA, Inc. (hereinafter MCA) appeals from the judgment in favor of defendant Franchise Tax Board (hereafter Board) in MCA's action to recover corporation franchise taxes after the Board disallowed MCA's claim for refund. The taxes were paid after the Board disallowed deductions of sums paid by MCA as foreign taxes in the year 1967.

The facts were presented in stipulation form. It was stipulated that a principal activity of MCA's business was the production and worldwide distribution of motion picture and television films distributed through licensing agreements with foreign exhibitors who paid "film rentals" for the right to exhibit them. MCA also engaged in the promotion and distribution of phonograph records, the reproduction and sale of which it licensed in foreign countries, and received in return "record royalties." Under these arrangements, MCA remained the owner of the motion picture negatives and prints and of all rights in the phonograph records except those specifically licensed.

"Most of the foreign countries in which plaintiff conducted business during 1967 imposed a tax upon or measured by the gross amount of film rentals and record royalties paid to [MCA] by the foreign licensees. Generally, the foreign taxes were computed without deduction of items such as business expenses, depreciation, or amortization. Some of the foreign taxes were on or measured by a percentage of gross receipts which was pegged at less than 100% by statute or administrative ruling or regulation, and others were on or measured by 100% of gross receipts, but with the tax rate being less than the normal tax rate."

Attached to the stipulation was a summary of many of these foreign tax laws. We note that many of them were at least entitled "income tax" laws.

It was further stipulated that on its 1967 California franchise tax return, MCA claimed a deduction under Revenue and Taxation Code[1] section 24345.[2] The Board disallowed the deduction on the basis of its

---

[1]All section references hereinafter are to the Revenue and Taxation Code unless otherwise stated.

[2]Section 24345 allows as a deduction "(a) [t]axes or licenses paid or accrued during the income year except:...(2) [t]axes on or according to or measured by income or profits...imposed by the authority of...[t]he Government of...any foreign country...."

determination that the foreign taxes in question were "'on or according to or measured by income.'"

The remainder of the stipulation dealt with legislative history and administrative interpretation of the parallel provisions of section 24345 and its counterpart in the Personal Income Tax Law, section 17204[3] and of the provisions of the Personal Income Tax Law (§ 18001 et seq.) allowing a credit against California tax for "'net income taxes'" paid elsewhere. It was stipulated in this respect that:

"10.    .    .    .    .    .    .    .    .    .    .    .    .    .

"a.    .    .    .    .    .    .    .    .    .    .    .    .    .

"b. Commencing in 1929 defendant (and its predecessor the Franchise Tax Commissioner) allowed corporate taxpayers to deduct Canadian taxes. Commencing in 1935, defendant (and its said predecessor) allowed individual taxpayers to deduct Canadian taxes.[4] Commencing in 1937, defendant (and its said predecessor) disallowed a credit for Canadian taxes paid by individual taxpayers on the ground that they were not 'net income taxes.'

"c. On several occasions defendant (and its said predecessor) litigated its position on Canadian taxes incurred by individual taxpayers. In each case, defendant (or its said predecessor) represented to the court that although Canadian taxes were not allowable as a credit, they were deductible. Four such cases are: *Burgess* v. *State*, 71 Cal.App.2d 412, 162 P.2d 855 (1945); *Burnham* v. *Franchise Tax Board*, 172 Cal.App.2d 438, 341 P.2d 833 (1959); *Clemens* v. *Franchise Tax Board*, 172 Cal. App.2d 446, 341 P.2d 838 (1959); *Crocker-Anglo National Bank* v. *Franchise Tax Board*, 179 Cal.App.2d 591, 3 Cal.Rptr. 906 (1960).

"d. In the early 1950s, defendant took the position that individual taxpayers were not entitled to either a credit or a deduction for Canadi-

---

[3]Section 17204 generally allows taxes to be deducted except "(2) [t]axes on or according to or measured by income or profits...."

[4]This Canadian tax was "'an income tax of fifteen per centum on nonresident persons ...imposed, without any exemption or deduction, in respect of the *gross amount* of all rents, royalties or similar payments for the use in Canada of real or personal property, patents, or for anything used *or sold* in Canada.'" (*Appeal of Georgia Guettler*, CCH (1953) Cal. Tax Rep. ¶ 200-212, at p. 12,578.) (Italics added.)

an taxes. Defendant was overruled by the State Board of Equalization in *Appeal of Georgia Guettler* (CCH Cal. Tax Service ¶ 200-212) and *Appeal of Edward and Frieda Liffman Meltzer* (CCH Cal. Tax Service ¶ 200-213) both decided on April 1, 1953. Defendant thereupon resumed allowing Canadian taxes to be deducted by both individuals and corporations.

"e. In the mid 1960s, defendant's audit staff again took the position that Canadian taxes were not deductible by individuals or corporations. On October 29, 1968, defendant's chief counsel issued a ruling that Canadian taxes were deductible.

"f. In the early 1970s, defendant once more took the position that Canadian taxes were not deductible. The matter again came before the State Board of Equalization in *Appeal of Lloyd W. and Ruth Bochner* (CCH Cal. Tax Service ¶ 205-094) decided May 15, 1974. The Board reversed its *Guettler* and *Meltzer* decisions and held that Canadian taxes were not deductible. In so ruling, the Board cited its earlier decision in *Appeal of Charles T. and Mary R. Haubiel* (CCH Cal. Tax Service ¶ 204-882) decided January 16, 1973, in which it was held that South West African taxes were not deductible. Since the issuance of the *Haubiel* and *Bochner* decisions, defendant has disallowed the deduction of Canadian taxes on film rentals and record royalties."

Additional facts not included in the stipulation relating to the administrative interpretation include the following: The Board concedes in its brief "that from 1929 until 1946 the Franchise Tax Board without disagreement allowed the deduction of Canadian Income taxes." Then, in 1946, the Board took the position that the Canadian income tax was neither deductible nor a credit against California personal income tax. It was, however, overruled in this respect by the Board of Equalization (in the exercise of its appellate administrative review of Board holdings against a taxpayer, pursuant to § 18593) in the *Guettler, supra,* and *Meltzer* (CCH (1953) Cal. Tax Rep. ¶ 200-213, at p. 12,579) appeals. Since the Board was compelled to follow the Board of Equalization ruling, it did so, as reflected in the position taken by it in the *Burnham, Clemens,* and *Crocker-Anglo National Bank* cases.

The Board, however, did not abandon its contention that taxes measured by gross income, which did not encompass returns of capital through sales, were nondeductible. It pressed this contention successfully in *Appeal of Don Baxter, Inc.,* CCH (1963) Cal. Tax Rep. ¶

202-288, at pages 12,283-12,284, in which the Board of Equalization held that taxes paid in the years 1954 through 1957 to Brazil, Italy, Mexico, Argentina and the Philippines upon gross royalties without any allowance for deductions were not deductible under section 24345. In *Baxter*, the Board of Equalization distinguished the *Guettler* and *Meltzer* decisions on the ground that "the measure of the Canadian tax was the gross amount not only of rents and royalties but of payments for anything used or *sold* in Canada," and specifically held that "[t]he fact that a tax is imposed upon the gross amount of royalties without benefit of any deductions does not establish that the tax is upon gross receipts as opposed to a tax on income." (¶ 202-288 at p. 12,284.)

Also, subsequent to the decisions in the *Guettler* and *Meltzer* appeals, the Board denied personal income tax deduction for án Alaskan tax upon gross royalties received by a California resident from gold mining in Alaska. In *Appeal of Jesson*, CCH (1957) Cal. Tax Rep. ¶ 200-731, at page 13,194, decided June 24, 1957, the Board of Equalization upheld the Board on the ground that the Alaskan tax was "on or according to or measured by income or profits" because it was "a tax measured by gross income. . . ." (*Id.*, at p. 13,195.)

During the same time frame, the Board likewise disallowed deductions for a Mexican tax upon gross corporate dividends. In *Appeal of William E. and Esperanza B. Mabee*, CCH (1966) Cal. Tax Rep. ¶ 203-137, at page 12,865, the Board of Equalization upheld the Board and ruled that since the corporate dividends did not constitute "returns of capital as well as income," it was "a tax on 'income' as that term is generally understood in this country."

Finally, the *Guettler* and *Meltzer* cases were overruled in 1973 by the Board of Equalization in *Appeal of Charles T. and Mary R. Haubiel*, CCH (1973) Cal. Tax Rep. ¶ 204-882, at page 14,397. The Board had disallowed deductions for South West African income taxes on gross dividends from a mining corporation paid to a California resident. Since all of the dividends in question were cash dividends paid out of earnings of the corporation, the application of the foreign tax to them was held a tax on income. The fact that the same tax law might, as applied to other dividends, be a tax upon return of capital, was held not determinative.

Before the tax year at issue in this appeal, the Board, pursuant to the authority granted by section 26422, issued regulations to carry out the

provisions of the Bank and Corporations Tax Law. These regulations for taxable years beginning after December 31, 1954, were included in California Administrative Register 64, No. 25-B of December 19, 1964. Regulation 24271, included therein, refines the definitions of the elements of gross income as defined in section 24271. Evidence Code section 451 and Government Code section 11343.7 (formerly § 11383) require that we take judicial notice of these regulations.

The trial court made findings of fact. Aside from adopting the provisions of the stipulation of facts and reciting the pertinent statutes and regulations, the findings consisted entirely of the following: "3. None of the foreign taxes paid by plaintiff was a net income tax. Said taxes were not intended to tax net gain. Rather, the foreign taxes paid by plaintiff were taxes on gross receipts.

"4. As applied to film rentals and record royalties, the terms 'gross receipts' and 'gross income' are synonymous."

The court then concluded as follows: "1. The statutory language of section 24345, 'taxes on or according to or measured by income,' must be read to use the term 'income' in the sense of gross income under the general tax law as currently operating under the decision in *Beamer* v. *Franchise Tax Board* (1977) 19 Cal.3d 467, 479.

"2. The film rentals and record royalties paid to plaintiff by the foreign licensees constituted gross income as defined in Section 24271(a) of the Revenue and Taxation Code during the period involved in this litigation. Any foreign tax imposed upon or measured by receipts which constitute gross income as defined in Section 24271(a) is a tax 'on or according to or measured by income' within the meaning of section 24345. Therefore, the foreign taxes imposed upon the receipts from film rentals and record royalties were not deductible under section 24345.

"3. Plaintiff is not entitled to refund of franchise tax for the income year ended December 31, 1967 under the Revenue and Taxation Code."

Accordingly, the court entered judgment that plaintiff "take nothing."

*Contentions*

■ Plaintiff contends that the trial court erred in construing section 24345 to disallow deduction of the foreign taxes paid by it because: (1) *Beamer* is not controlling, and the only foreign taxes made nondeductible are those imposed on a tax base comparable to the California income tax, i.e., net income taxes; and (2) the taxes at issue are gross receipts taxes.

Defendant controverts all of plaintiff's contentions.

*Discussion*

*Summary*

The decision in *Beamer v. Franchise Tax Board* (1977) 19 Cal.3d 467 [138 Cal.Rptr. 199, 563 P.2d 238], is controlling that "income," as used in section 24345, means "gross income under general tax laws currently operating." Under such general tax law, the film rentals and record royalties received by MCA were gross income. A tax based upon the receipt thereof was a tax measured by income made nondeductible by section 24345. The fact that such rents and royalties also constituted MCA's gross receipts does not make the taxes any less taxes measured by gross income.

*The Decision in Beamer Is Controlling*

The decision of our Supreme Court in *Beamer, supra,* was rendered in 1977, after all of the administrative interpretations relied upon by both parties herein were history. Since none of it is referred to therein, it is probable that in reaching its decision, the court did not have before it the extensive record of prior inconsistent administrative interpretations which are presented by the parties in this case. No purpose would be served, however, by our speculating as to how such information might have affected the decision of the court. Under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], this subordinate appellate court must accept the law as declared by our Supreme Court.

The law as declared by the Supreme Court in *Beamer* leaves no room for doubt as to the meaning of the language employed in section 24345

rendering nondeductible "taxes on or according to or measured by income or profits." In *Beamer*, the court was dealing with the identical language which appears in the corresponding section of the Personal Income Tax Law, section 17204. Furthermore, the Personal Income Tax Law and the Bank and Corporations Tax Law both contain definitions of gross income which in pertinent parts are identical. (Cf. §§ 17071 and 24271, subd. (a)(1)-(7).) "Since these statutes are obviously *in pari materia*, the interpretation of a sentence in one controls the interpretation of virtually the same sentence in the other." (*In re Phyle* (1947) 30 Cal.2d 838, 845 [186 P.2d 134].)

The California resident taxpayer in *Beamer* had paid a Texas "'occupation tax' on the business of producing natural gas and crude petroleum" measured by the "'market value' of the oil and gas 'as and when produced' . . . ." (19 Cal.3d at p. 470.) In the case of oil sold for cash, the value was deemed to be the producer's gross cash receipts. The California taxpayer was deemed a producer under Texas law of his share of the oil produced and when it was sold his share of the value was the same as his gross royalty receipts.

The court held that the Texas tax was deductible. The court reasoned as follows. The basic premise was the court's statement: "[W]e read our statutory language, 'taxes on or according to or measured by income,' to use the term 'income' in the sense of gross income under general tax law as currently operating." (19 Cal.3d at p. 479.) Then, because the taxpayer was required to be treated as in the business of mining, the court referred to existing state and federal tax regulations to define gross income of such businesses, saying in this respect (*id.*, at p. 476): "[R]elevant regulations of both the Franchise Tax Board (Cal. Admin. Code, tit. 18, reg. 17071(c)) and the Internal Revenue Service (Treas. Reg. § 1.61-3(a)(1960)) provide in part that 'In a manufacturing, merchandising, or mining business, "gross income" means the *total sales, less the cost of goods sold* . . . .'" (Italics in original.)

These regulations were characterized as a recognition of the fact that gross receipts of such businesses include "'receipts which may constitute capital as well as income'" and "'returns of capital may not be taxe[d].'" (*Id.*, at p. 477.) As applied to a mining business, the court found these regulations meant that "lifting costs" were required to be subtracted from the gross receipts in order to determine the gross income.

The court's interpretation of "income" as meaning "gross income under general tax laws currently operating" was, therefore, an indispensable element of its decision and not a dictum as MCA contends. This is made more apparent by the concurring opinion of Justice Sims in *Beamer* who states the view obviously not shared by the majority that the restriction on deductibility "is strictly limited to taxes on or according to or measured by net income or profits." (*Id.*, at p. 480.)

There is nothing in the decision in *Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386 [146 Cal.Rptr. 558, 579 P.2d 449], which in any way modifies *Beamer*. In *Weekes*, the court was concerned with an "express statutory prohibition against municipal taxes 'upon income'" (*id.*, at p. 390) in section 17041.5. An Oakland Municipal Code provision imposed a license fee upon "the 'privilege of engaging in or following any business, trade, occupation or profession as an employee,'" "measured by the employee's 'gross receipts' for services performed in Oakland...." (*Ibid.*). In an opinion by the court in which five justices concurred,[5] the validity of the Oakland tax was upheld by narrowly construing the statutory prohibition. Section 17041.5 was construed to be a prohibition only against taxes "upon income" inapplicable to an occupation license tax, even though income was "the designated *measure* of tax liability." (*Id.*, at p. 394.)

■ The legislative history of section 24345 forecloses any such narrow interpretation. As originally enacted in 1929, the predecessor section disallowed only taxes "on income or profits." (Stats. 1929, ch. 13, § 8, subd. c.) The current language "on or according to or measured by income or profits" was added by amendment in 1933. (Stats. 1933, ch. 209, § 1.) The purpose of the amendment is obvious—to make nondeductible all taxes measured by income, no matter what they are levied upon. The operative language of sections 24345 and 17041 is significantly different from that of section 17041.5 interpreted in *Weekes*. *Beamer* expressly recognized the distinction; it summarily determined that "the Texas taxes are not taxes *on* income" (19 Cal.3d at p. 475), and then proceeded to discuss at length the issue whether they were taxes "measured by income." The question considered in *Weekes* was, therefore, entirely distinct from that considered in *Beamer*.

---

[5] Two of the concurring justices would also reach the same result upon an "additional ground" that "the Legislature lacks power to proscribe municipal income taxes." (*Id.*, at p. 398.)

■ As a result of the *Beamer* court's interpretation of section 24345, it contains no ambiguity which permits resort to legislative history or administrative interpretation. Such sources are valuable aids in the interpretation of ambiguous statutes but a provision which has been authoritatively construed by our Supreme Court does not fall in that category. Moreover, the legislative history and administrative interpretation relied upon by plaintiff are not sufficiently definitive to be helpful in this respect.

■ The only legislative history referred to by plaintiff comprises analyses by the alleged "architects" of the 1933 amendment to the predecessor to section 24345 already referred to. In this material there are repeated references to taxes "measured by net income" as being indistinguishable from taxes "upon net income" to justify the broader language of the proposed amendment. There is nothing in the analysis, however, to suggest that the broadened exclusion should apply only to taxes measured by net income.

The claimed administrative interpretation is likewise lacking in persuasive value. The Legislature has failed to take any action over a period of many years during which apparently conflicting interpretations of the statutory language have been in vogue. It is true that the Board initially adopted a position with respect to the Canadian tax law which was consistent with plaintiff's position. It was deterred from effectively revising that position while the Board of Equalization adhered to the *Guettler* and *Meltzer* rule but it did not abandon the attempt. Though it was not until 1973 that the *Guettler* and *Meltzer* interpretations of the Canadian tax law were overruled, for several years prior thereto the prevailing interpretation with respect to other foreign tax laws coincided with the view ultimately expressed by our Supreme Court in *Beamer*. At no time was there a settled interpretation equating "measured by income or profits" as used in section 24345 with "measured by net income." Moreover, despite the reversals of position by the Board of Equalization, the Legislature took no action to amend or clarify the section.

Plaintiff also argues that the *Beamer* interpretation of section 24345 "may very well create an unconstitutional denial of equal protection of the laws." From this premise, plaintiff argues "[w]hen a proposed construction of a statute raises a doubt of constitutionality, the courts must first ascertain whether a construction of the statute is fairly possible by

which the question may be avoided." Plaintiff tenders several illustrations of alleged inequality in the application of the section as construed by *Beamer* as supporting its claim of "doubt of constitutionality" but does not directly argue that the statute so construed *is unconstitutional*. Plaintiff cites *In re Kotta* (1921) 187 Cal. 27, 32 [200 P. 957], for the proposition that "[t]ax laws that *avowedly* lay a different and higher burden upon a portion only of all those similarly situated" (italics added) deny equal protection of the laws but cites no authority that deductions from gross income must in their application to each individual taxpayer operate fairly and equally. The United States Supreme Court has said "to what extent deductions shall be allowed depends upon legislative grace." (*New Colonial Ice Co.* v. *Helvering* (1934) 292 U.S. 435, 440 [78 L.Ed. 1348, 1352, 54 S.Ct. 788]; see also *Anderson* v. *Helvering* (1940) 310 U.S. 404, 407 [84 L.Ed. 1277, 1279-1280, 60 S.Ct. 952].) A similar statement appears in *Tetreault* v. *Franchise Tax Bd.* (1967) 255 Cal.App.2d 277, 282 [63 Cal.Rptr. 326]. The application of equal protection principles to income tax deductions is therefore, to say the least, obscure.

More importantly, as a tool of statutory interpretation, plaintiff's "doubt of constitutionality" argument is addressed to the wrong court. As above pointed out, our Supreme Court has already definitively construed the language of section 24345, and we are bound by that construction until our Supreme Court revises it. Plaintiff should, therefore, address its argument to our Supreme Court on petition for hearing.

We, therefore, conclude that the deductibility of the foreign taxes paid by plaintiff is governed by the rule stated in *Beamer* and that they are not deductible if they are taxes on or measured by gross income.

*Plaintiff's Foreign Taxes Are Measured by Gross Income*

When the rationale of *Beamer* is applied and the applicable statutes and regulations are examined, the conclusion is inescapable that the taxes in issue in this case are taxes measured by gross income. The "general tax law as currently operating" (19 Cal.3d at p. 479) when tax liability was incurred included section 24271, defining gross income under the Bank and Corporations Tax Law. That section provided, in pertinent part, as follows: "(a) Except as otherwise provided in this

part, gross income means all income from whatever source derived, including (but not limited to) the following items:

"(1) Compensation for services, including fees, commissions, and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends;"

The governing regulations included the following regulations from title 18 of the California Administrative Code: "Gross income means *all income from whatever source derived, unless excluded by law.* Gross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services, accommodations, stock, or other property, as well as in cash. Section 24271 lists the more common items of gross income for purposes of illustration. Gross income, however, is not limited to the items so enumerated." (Reg. 24271(a).) (Italics added.)

"In a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. Gross income is determined without subtraction of depletion allowances based on a percentage of income and without subtraction of selling expenses, losses, or other items not ordinarily used in computing cost of goods sold. The cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer." (Reg. 24271(b)(1).)

"Gross income includes rentals received or accrued for the occupancy of real estate or the use of personal property. Gross income includes royalties. Royalties may be received from books, stories, plays, copyrights, trademarks, formulas, patents, and from the exploitation of natural resources, such as coal, gas, oil, copper, or timber. Where land containing minerals is sold and the proceeds of the sale are based upon the amount of minerals produced, in most instances the payments constitute royalty income." (Reg. 24271(f)(1).)

Regulation 24271, subdivision (a) makes it clear that gross income includes all income unless expressly excluded by law. Thus, the provisions of regulation 24271, subdivision (b), limiting the application of

cost of goods sold to a "manufacturing, merchandising, or mining business" and providing that even with respect to such business "items not ordinarily used in computing cost of goods sold" cannot be subtracted, clearly prevent subtraction of depreciation or allowances for exhaustion of wasting assets in determining gross income. Hence, regulation 24271, subdivision (f) means that all rents and royalties are included in gross income without subtraction of any such items.

The regulations are, moreover, wholly consistent with the statutory definition of gross income. Whereas subdivision (a)(2) of section 24271 specifies "[g]ross income derived from business," rather than gross receipts, subdivisions (a)(5) and (a)(6), include "[r]ents" and "[r]oyalties," each of which is descriptive of a gross receipt as a category of income, "all" of which must be included. To the extent that assets are depleted or depreciated by the production of rents and royalties, a deduction from gross income in computing net income is permitted pursuant to express statutory provisions. (See, e.g., § 24349.)

A tax upon or measured by gross royalties and rents from personal property is, therefore, under the holding of *Beamer*, a tax "on or . . . measured by income" made nondeductible by section 24345.

Plaintiff made no showing that it has any "cost of goods sold." Consequently, under the currently operating general tax law, including the above regulations, its "gross income" and its "gross receipts" from rents and royalties were the same. This does not, however, make the foreign taxes on its rents and royalties "measured by gross receipts . . . and not by gross income" so as to be deductible under the rule stated in *Beamer* (19 Cal.3d at p. 480). To qualify for deduction on this basis, the gross receipts must include, as did the Texas tax on producers, an element of direct return of capital invested as cost of goods sold. Plaintiff has no such cost of goods sold and, consequently, plaintiff's gross rentals and royalties received are gross income. They are no less so because they are also plaintiff's gross receipts. The fact that plaintiff may thereby recoup costs of wasting assets used in generating such receipts does not alter the result. As regulation 24271, subdivision (b) makes clear, even as to manufacturing, merchandising and mining businesses gross income "is determined without subtraction of depletion allowances . . . or other items not ordinarily used in computing costs of goods sold." Such items are appropriately deducted from gross income to determine net income for the purpose of tax computation.

We conclude, therefore, that the taxes which plaintiff sought to deduct were taxes measured by gross income and that the trial court, therefore, correctly determined that they were not deductible.

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1981.