[Civ. No. 20237. Third Dist. June 3, 1981.]

RAYMOND F. ROBINSON et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

FRANCIS L. WRIGLEY et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

WYATT E. MacFARLANE et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Appellant.

Thomas E. Smail, Jr., for Plaintiffs and Respondents.

OPINION

BLEASE, J.—Defendant Franchise Tax Board (board) appeals from judgments entered after the court found in plaintiffs' (taxpayers) favor on contested tax amounts and ordered refunds. The cases are consolidated.

The primary issue we consider is whether taxes paid by the James C. Campbell trust, a Hawaii trust, to the State of Hawaii are "on or according to or measured by income or profits" (Rev. & Tax. Code, § 17204, subd. (c)(2)),[1] which determines whether they may be deducted in computing the California income tax upon the trust. We conclude that as to some of its applications, the Hawaii tax is "on or measured by income or profits" and as to other applications it is not, but that the taxpayers have failed to carry their burden of proving which of the taxes paid, if any, fall within the deductible applications of the Hawaii tax. We reverse the judgment.

[1]All statutory references, unless otherwise noted, are to the California Revenue and Taxation Code.

FACTS

The facts are essentially contained in a stipulation of facts.

The taxpayers are beneficiaries of a trust resulting from the estate of James C. Campbell, who died in Hawaii in 1906. The trust has approximately $400 million of assets and approximately 150 beneficiaries. The trust is quite active in the State of Hawaii, maintaining various business licenses and numerous employees, and is involved in industrial, agricultural and residential development. The trust has no real property, no personal property and no intangible property in the State of California.

The estate of James C. Campbell and the trust are located in Hawaii; all of the trustees of the trust are in Hawaii and all of the beneficiaries of the trust, with the exception of taxpayers, are outside the State of California.

In connection with the operations of the trust in Hawaii, it paid a "Hawaii General Excise Tax" to the State of Hawaii pursuant to the provisions of chapter 237, Hawaii Revised Statutes.

Taxpayers Wrigley reported the total sums actually received from the trust, as beneficiaries, for the calendar years 1969 through 1972. Taxpayers Robinson reported in a like manner for the calendar year 1972, as did taxpayers MacFarlane.

The board determined that the taxpayers should have included as trust income, taxable in California, their proportional shares of the "excise" taxes paid to Hawaii and assessed deficiencies and penalties which taxpayers paid.

The trial court concluded that the Hawaii "excise" tax, reviewed as a whole, is a gross receipts tax and that amounts paid as such a tax are deductible in computing the trust income which is taxable in California. We disagree with the court's analysis and reverse the judgment.

DISCUSSION

I

We first consider taxpayers' argument that we need not reach the issue whether the Hawaii tax may be deducted from the trust in-

come in computing the taxable amount since the measure of the taxable income is the income *from* the trust *to* the taxpayer, which does not include the amounts of the taxes paid to Hawaii.

They rely upon a board regulation (Cal. Admin. Code, tit. 18, §§ 17742-17745, subd. (a)(4)) which specifies the trust income to be taxed as "that portion of all net income . . . which *eventually* is to be distributed" to resident beneficiaries. (Italics added.)

Taxpayers' argument is based upon the implied premise that it is the beneficiary's income and not the trust's income which is the measure of the income to be taxed. They claim that only the income from the trust to the beneficiary is income subject to California taxes. Therefore, they say, "[i]f the tax paid by the trust to the State of Hawaii never goes into income, it need not be deducted out of income . . . ."

The premise is incorrect. It is founded upon a misconception of the statutory method by which California taxes the income of a foreign trust. We read the administrative regulation in the light of its parent statutes.

"California has evolved a comprehensive system for the taxation of trust income . . . which treats the trust as a separate economic entity." (Fn. omitted.) (*McCulloch* v. *Franchise Tax Bd.* (1964) 61 Cal.2d 186, 191 [37 Cal.Rptr. 636, 390 P.2d 412].) "As to a trust which has contacts that are partly local and partly foreign, . . . the entire undistributed income becomes taxable by California 'if the *fiduciary or beneficiary* is a resident' of this state." (*Id.*, at p. 192 [citing to what is now § 17742].)

Section 17745, subdivision (a),[2] provides that when the "*income of a trust* . . . is taxable to the trust because the . . . beneficiary is a resident of this State" and the taxes on the trust income are not paid, "*such income* shall be taxable to the beneficiary when distributable to him . . . ." Plainly, the income to be taxed is *trust* income, but such income is not "taxable to the beneficiary" until it is distributable to him.

---

[2]Section 17745, subdivision (a), provides: "(a) If, for any reason, the taxes imposed on income of a trust which is taxable to the trust because the fiduciary or beneficiary is a resident of this State are not paid when due and remain unpaid when such income is distributable to the beneficiary, or in the case the income is distributable to the beneficiary before the taxes are due, if the taxes are not paid when due, such income shall be taxable to the beneficiary when distributable to him except that in the case of a non-

The trust income, when distributable, is "included in the gross income of each beneficiary" in an amount proportioned to the beneficiary's share of the entire distributable income of the trust. (§ 17752, subd. (a).) But such distributable *income "shall have the same character in the hands of the beneficiary as in the hands of the trust."* (§ 17752, subd. (b).) We read the regulatory phrase "income which is to eventually be distributed" as meaning the beneficiary's share of the distributable *trust* income.

California law provides for the *collection* of unpaid trust taxes by inclusion in a resident beneficiary's gross income of the beneficiary's pro rata share of the distributable trust income. It is not what the beneficiary gets from the trust, but his distributable share of the income *to* the trust which measures the income upon which the California tax is levied. What the beneficiary gets or is entitled to get provides only a pool out of which the state ladles the unpaid taxes of the trust.

## II

We next determine whether the Hawaii excise tax is a tax levied "on or according to or measured by income or profits" (§ 17204, subd. (c)(2)(B)[3]) which precludes its deduction from the trust income in computing the income taxable in California.[4]

Taxpayers ask us to resolve the issue by a general analysis of the Hawaii tax law without regard to its specific applications to the income of the trust. They claim that the Hawaii law, judged as a whole, is a gross receipts tax and "therefore" not "measured by income." The board argues that the Hawaii tax must be judged by its application to different forms of income, that some of its applications constitute a tax "measured by income" and some do not, but that the taxpayers have failed to

---

resident beneficiary such income shall be taxable only to the extent it is derived from sources within this State."

[3]Section 17204, subdivision (c)(2)(B), provides: "(c) No deduction shall be allowed for the following taxes: ... [¶] (2) Taxes on or according to or measured by income or profits paid or accrued within the taxable year imposed by the authority of: ... [¶] (B) Any state, territory, county, city and county, school district, municipality, or other taxing subdivision of any state or territory; ..."

[4]California generally taxes the income of a trust as if it were an individual (§ 17731) under the Personal Income Tax Law; hence, the provisions of section 17204 apply in determining which foreign taxes may be deducted from the trust income in computing the taxable income of the trust.

carry their burden of proof of showing which portions of the taxes paid, if any, are *not* measured by income. So presented, we resolve the case in favor of the board.

■ *Beamer* v. *Franchise Tax Board* (1977) 19 Cal.3d 467 [138 Cal.Rptr. 199, 563 P.2d 238] is controlling. It held that the term "'income'" in the statutory phrase "'taxes on or according to or measured by income,'" means gross income as defined "under general tax law as currently operating." (*Id.*, at p. 479.) As general tax law, the court referred to federal and state tax law defining gross income as applied to the business activity taxed. *Beamer*, in apparent recognition of the Sixteenth Amendment origins of the federal income tax law,[5] also generally excludes a return of capital from the meaning of gross income and thereby distinguishes gross income from gross receipts. "'The terms "gross income" and "gross receipts" are not synonymous. "Gross receipts" is a broader term, including within it receipts which may constitute capital as well as income, and, as shown above, returns of capital may not be taxe[d].'" (*Beamer, supra*, at p. 477, citing to 1 Mertens, Law of Federal Income Taxation (1974) § 5.10.)

The details of the *Beamer* case are instructive here and we excerpt them from the excellent summary in *MCA, Inc.* v. *Franchise Tax Board* (1981) 115 Cal.App.3d 185 [171 Cal.Rptr. 242].

"The California resident taxpayer in *Beamer* had paid a Texas "'occupation tax" on the business of producing natural gas and crude petroleum' measured by the "'market value" of the oil and gas "as and when produced" ....' ([*Beamer* v. *Franchise Tax Board*] 19 Cal.3d at p. 470.) In the case of oil sold for cash, the value was deemed to be the producer's gross cash receipts. The California taxpayer was deemed a producer under Texas law of his share of the oil produced and when it was sold his share of the value was the same as his gross royalty receipts. [¶] The court held that the Texas tax was deductible. The court reasoned as follows. The basic premise was the court's statement: '[W]e read our statutory language, "taxes on or according to or measured by income," to use the term "income" in the sense of gross income under general tax law as currently operating.' (19 Cal.3d at p. 479.) Then, because the taxpayer was required to be treated as in the business of

---

[5]"[T]here is substantial agreement that amounts received as a return of capital or investment are not income within the general meaning of that term and may not be taxed under the Sixteenth Amendment." (1 Mertens, Law of Federal Income Taxation (1974) § 5.06.)

mining, the court referred to existing state and federal tax regulations to define gross income of such businesses, saying in this respect (*id.*, at p. 476): '[R]elevant regulations of both the Franchise Tax Board (Cal. Admin. Code, tit. 18, reg. 17071(c)) and the Internal Revenue Service (Treas. Reg. § 1.61-3(a) (1960)) provide in part that "In a manufacturing, merchandising, or mining business, 'gross income' means the *total sales, less the cost of goods sold....*"' (Italics in original.) [¶] These regulations were characterized as a recognition of the fact that gross receipts of such businesses include '"receipts which may constitute capital as well as income"' and '"returns of capital may not be taxe[d]."' (*Id.*, at p. 477.) As applied to a mining business, the court found these regulations meant that 'lifting costs' were required to be subtracted from the gross receipts in order to determine the gross income." (*MCA, Inc.* v. *Franchise Tax Board, supra*, 115 Cal.App.3d at p. 193.)

Taxpayers make a number of claims about the application of *Beamer* to the Hawaii law, which we examine below. First, we look to the significant features of the Hawaii tax law.

The Hawaii statute (3a Hawaii Rev. Stats. (1976) ch. 237, §§ 237-1—237-49) imposes annual "privilege taxes against persons on account of their business and other activities in the State *measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified* ...." (Italics added.) (*Id.*, at § 237-13.) Trust estates and trusts are included in the definition of "person" for tax purposes. (*Id.*, at § 237-1.) Gross income[6] is defined as "gross receipts ... received as compensation for personal services and the gross receipts ... derived from trade, business, commerce, or sales ... and all receipts, actual or accrued ... by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, ... however designated and *without any deductions on account of the cost of property sold, the cost of materials used, labor cost, taxes, royalties, interest, or discount paid or any other expenses whatsoever.*" (Italics added.) (*Id.*, at § 237-3.) Gross proceeds of sale "means the value actually proceeding from the sale of tangible personal property *without any deduction on account of the cost of property sold or expenses of any kind.*" (Italics added.) (*Ibid.*)

---

[6]The label does not control. (*Beamer* v. *Franchise Tax Board* (1977) 19 Cal.3d 467, 475 [138 Cal.Rptr. 199, 563 P.2d 238].) We look to the definition of gross income in the statute.

As to manufacturing, the Hawaii tax is imposed on the *gross proceeds* derived from *sales* (Hawaii Rev. Stats., *supra*, at § 237-13, subd. (1)(A)), gross proceeds is also the measure of taxes on *sales* of any tangible personal property. (*Id.*, at § 237-13, subd. (2)(A).) Contractors, theater operators, sales representatives, service businesses, and professionals are taxed on *gross income*[7] (*id.*, at § 237-13, subds. (3)-(8)), as is every other person engaging in any business, trade, activity, occupations, or calling not included in other subdivisions. (*Id.*, at § 237-13, subd. (10).) A business may be subject to two or more tax rates, depending upon which subdivision of section 237-13 applies to an activity. (*Id.*, at § 237-14.)

Taxpayers, following the decision of the trial court[8] and relying upon language in the Hawaii law emphasized above, ask us to characterize the Hawaii tax, without reference to its specific applications, as a gross receipts tax, because, without regard to the nature of the business enterprise taxed, it measures the income to be taxed without deduction of costs or expenses. Taxpayers then argue that the general characterization controls without regard to whether the tax law, measured by its specific application, is also a gross income tax.

Taxpayers have stood the analysis on its head.[9] *Beamer* directs us to determine from an analysis of the foreign tax law, measured by general tax law, whether the tax is a gross income tax. Since the general tax law defines gross income by the nature of the income (26 U.S.C.

---

[7]See *ante*, footnote 6, page 79.

[8]The trial court seized upon the basic distinction between gross income and gross receipts and concluded "that since that term gross income is defined by the Hawaii statute as meaning gross proceeds of sale, a fortiori, all of the Hawaii taxes are deductible. The court explained its decision in the following words: [¶] 'The State of Hawaii General Excise Tax is measured by "gross income" and "gross proceeds of sale." The two concepts are not synonymous, except as they can be made so within the definitions quoted above. The Hawaii General Excise Tax definition of gross income specifically denies any deduction of the cost of goods sold, materials used, labor costs and the like, as quoted above. In other words, "gross receipts."'" The trial court then concluded that the Hawaii tax is a tax measured by "gross receipts."

[9]Taxpayers correctly note that Beamer did not personally incur any lifting costs and that the income, as to him, was also gross income. (*Beamer* v. *Franchise Tax Board, supra*, 19 Cal.3d at p. 480.) They draw from this that if receipts can be viewed as both gross income and gross receipts, the gross receipts characterization controls. Taxpayers misread *Beamer*. The issue there was whether Texas *law* permitted deduction of lifting costs, not whether Beamer had any and, consequently, whether the Texas *law*, measured by general tax law, was a tax on gross income. (Compare *MCA, Inc.* v. *Franchise Tax Board* (1981) 115 Cal.App.3d 185, 198 [171 Cal.Rptr. 242].)

§ 61;[10] Rev. & Tax. Code, § 17071[11]), we are required to measure the tax by reference to the specific income activity taxed. In *Beamer*, the court was concerned with the mining business. As to the mining business "'gross income means the *total sales, less cost of goods sold* ....'" (*Beamer* v. *Franchise Tax Board, supra*, 19 Cal.3d at p. 476.) But, as will be shown, such definition does not apply to other forms of gross income (e.g., rent and interest).

An inspection of the Hawaii law shows its multifaceted applications. As applied to retail sales, it is a sales tax not measured by gross income. (See Internal Revenue Service, rev. rule 58-564; see also Rev. & Tax. Code, § 6051; 11 Marshall, Cal. Practice, State and Local Taxation (1969) § 161, pp. 199-200.) As applied to mining activities, it is a gross receipts (and not a gross income) tax similar to that considered in *Beamer*.

In our case, the state and federal income tax forms filed by the trust in 1969 through 1972 show its income was primarily derived from interest, real property rents and royalties. The royalties listed are from "rock sales." Taxes on trust activities were remitted to the state during each year and amounts paid for "rock sales" and "income" are listed separately as deductions under the heading "Hawaii Gross Income Tax" on the tax forms.

---

[10]"(a) Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: [¶] (1) Compensation for services, including fees, commissions, and similar items; [¶] (2) Gross income derived from business; [¶] (3) Gains derived from dealings in property; [¶] (4) Interest; [¶] (5) Rents; [¶] (6) Royalties; [¶] (7) Dividends; [¶] (8) Alimony and separate maintenance payments; [¶] (9) Annuities; [¶] (10) Income from life insurance and endowment contracts; [¶] (11) Pensions; [¶] (12) Income from discharge of indebtedness; [¶] (13) Distributive share of partnership gross income; [¶] (14) Income in respect of a decedent; and [¶] (15) Income from an interest in an estate or trust." (26 U.S.C. § 61.)

[11]"(a) Except as otherwise provided in this part, gross income means all income from whatever source derived, including (but not limited to) the following items: [¶] (1) Compensation for services, including fees, commissions, and similar items; [¶] (2) Gross income derived from business; [¶] (3) Gains derived from dealings in property; [¶] (4) Interest; [¶] (5) Rents; [¶] (6) Royalties; [¶] (7) Dividends; [¶] (8) Alimony and separate maintenance payments; [¶] (9) Annuities; [¶] (10) Income from life insurance and endowment contracts; [¶] (11) Pensions; [¶] (12) Income from discharge of indebtedness; [¶] (13) Distributive share of partnership gross income; [¶] (14) Income in respect of a decedent; and [¶] (15) Income from an interest in an estate or trust. [¶] (b) For items specifically included in gross income, see Article 2 (Section 17081 and following). For items specifically excluded from gross income, see Article 3 (Section 17131 and following)." (§ 17071.)

It appears that the bulk of the trust income is rental and interest income. These items are specifically listed as gross income in the California and federal statutes (Rev. & Tax. Code, § 17071, subds. (a)(4), (a)(5) [see *ante*, fn. 11]; 26 U.S.C. § 61(a), subds. (a)(4)-(a)(6) [see *ante*, fn. 10]; and see (former) Cal. Admin. Code, tit. 18, § 17071, subd. (g), and 26 C.F.R. §§ 1.61-7, 1.61-8; *MCA, Inc.* v. *Franchise Tax Board, supra*, 115 Cal.App.3d at pp. 196-198.) Rent, for example, is *defined* to *exclude* a return of capital. (See Int. Rev. Code (1954) § 162(a)(3); Mertens (1974) vol. 1, § 6A.02; vol. 4a, § 25.108, "The term 'rentals' should be taken in its usual and ordinary sense, that is, 'as implying a fixed sum . . . to be paid at stated times for the use of property . . . and in that sense *does not include payments, . . . made for the cost of improvements . . . .*'" (Italics added.)) (*Oesterreich* v. *Commissioner of Internal Revenue* (9th Cir. 1955) 226 F.2d 798; see also Rev. & Tax. Code, § 17202, subd. (a)(3); former Cal. Admin. Code, tit, 18, § 17071, subd. (g) ["The following items are allowed as deductions: [¶] (1) All the necessary expenses paid or incurred for the production of income or in carrying on any trade or business are deductible including: [¶] (c) Rentals or other payments made to assure the continued use or possession of property used in business as long as the taxpayer has not taken and is not taking title or as long as he has no equity in it." (Fns. omitted.) (12 Marshall, *supra*, § 573, subd. C(1)(c), p. 51.])

Since the definition of rent excludes a return of capital or cost of goods sold, it is, of course, immaterial that the Hawaii law also does not permit a deduction of such items *from* rent. The Hawaii tax law apparently excludes return of capital from "any proceeds that constitute or are in the nature of rent. . . ." (Hawaii Rev. Stats., *supra*, § 237-13, subd. (3)(D).) Accordingly, rent, as used in the Hawaii law, bears the same meaning as that in use in the controlling general tax law. Taxpayers may not deduct the taxes paid on such income.

We note that part of the trust income was characterized as "royalties" from "rock sales." *If* the sales were a part of a manufacturing, merchandising, or mining business activity, the Hawaii tax is measured by gross proceeds under section 237-13, subdivisions (1) and (2), so defined as to *exclude* the costs of goods sold. California tax regulations in effect when the taxes were paid define "gross income" in these businesses as "the total sales, less the cost of goods sold." (Cal. Admin. Code, tit. 18, § 17071, subd. (c) [repealed]; see *Beamer, supra*, 19 Cal.3d at p. 476.) Such a Hawaii tax is deductible under California law. Howev-

er, the taxpayers have placed all of their income in one basket. Consequently, they have failed to carry the burden of showing that the Hawaii tax, as applied to rock sales, falls within section 237-13 of the Hawaii Revised Statutes. (*Flying Tiger Line, Inc.* v. *State Bd. of Equal.* (1958) 157 Cal.App.2d 85, 95 [320 P.2d 552].)

The judgment is reversed.

Puglia, P. J., and Paras, J., concurred.