[No. B053136. Second Dist., Div. Five. Oct. 17, 1991.]

HARRY J. GRAY et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Bewley, Lassleben & Miller, Joseph A. Vinatieri and Kevin P. Duthoy for Plaintiffs and Respondents.

OPINION

GRIGNON, J.—The sole issue on appeal is whether plaintiffs and respondents Harry J. Gray and Helen Gray (taxpayers), who are Connecticut residents, are entitled to a credit against their 1979 and 1980 California nonresident personal income taxes for taxes which were paid to the State of Connecticut on California-source capital gains. We conclude that taxpayers are entitled to such a credit and affirm.

FACTS

Taxpayers and defendant and appellant Franchise Tax Board (Board) stipulated in writing to the following facts:

"1. During the years 1979 and 1980, [taxpayers] were residents of the State of Connecticut for the purposes of the Personal Income Tax Law of the State of California.

"2. During the year 1979, [taxpayers] received capital gain income from their sales of their interests in real estate partnerships located in the State of California.

"3. For the year 1979, [taxpayers] paid to the State of Connecticut the tax imposed on the above capital gain income by section 12-506 of the General Statutes of the State of Connecticut in the sum of $6,831.00.

"4. For the year 1979, [taxpayers] filed with the Board their California non-resident personal income tax return. On this return, [taxpayers] reported the above capital gain income and claimed a credit in the above sum of $6,831.00 against their California personal income tax for the above Connecticut tax.

"5. The Board denied the above credit and assessed tax against [taxpayers] in the above sum of $6,831.00, plus interest on the above tax.

"6. On March 3, 1986, [taxpayers] paid to the Board the above tax in the above sum of $6,831.00, plus interest in the sum of $5,744.98 on said tax.

"7. On March 31, 1986, [taxpayers] paid to the Board additional interest in the sum of $157.18 on said tax.

"8. During the year 1980, [taxpayers] received capital gain income from their sales of their interests in real estate partnerships located in the State of California.

"9. For the year 1980, [taxpayers] paid to the State of Connecticut the tax imposed on the above capital gain income by section 12-506 of the General Statutes of the State of Connecticut in the sum of $14,886.00. The portion of said tax allocable to California capital gain income was the sum of $14,052.00.

"10. For the year 1980, [taxpayers] filed with the Board their California non-resident personal income tax return. On this return, [taxpayers] reported the above capital gain income and claimed a credit in the above sum of $14,052.00 against their California personal income tax for the above Connecticut tax.

"11. The Board denied the above credit and assessed tax against [taxpayers] in the above sum of $14,052.00, plus interest on said tax.

"12. On March 3, 1986, [taxpayers] paid to the Board the above tax in the above sum of $14,052.00, plus interest in the sum of $9,564.38 on said tax.

"13. On March 31, 1986, [taxpayers] paid to the Board additional interest in the sum of $293.35 on said tax.

"14. On February 23, 1987, [taxpayers] timely filed with the Board their claim for refund of their above payments to the Board. ([Taxpayers] set forth the same grounds for refund in their claim for refund that they set forth in their first amended complaint on file in the above entitled action.)

"15. On June 4, 1987, the Board denied the above claim for refund as to [taxpayers'] above payments to the Board for the year 1979, and on August 12, 1987, the Board denied the above claim for refund as to [taxpayers'] above payments to the Board for the year 1980.

"16. [Taxpayers] timely filed the above entitled action."

## PROCEDURAL BACKGROUND

The parties submitted the case for court trial solely on the basis of a written stipulation of facts and statement of issues, written points and authorities, and oral argument. The trial court found in favor of taxpayers and entered judgment in their favor in the amount of $57,314.17. The Board appeals.

## DISCUSSION

■ It is well established that the application of a taxing statute to stipulated facts is a question of law to be determined by the appellate court. "Since the issues here involve the application of a taxing statute to stipulated facts, we are confronted solely with a question of law and are not bound by the findings of the trial court. [Citations.] ■ In a suit for tax refund, the taxpayer has the burden of proof; he must affirmatively establish the right to a refund of the taxes by a preponderance of the evidence. [Citations.]" (*Consolidated Accessories Corp.* v. *Franchise Tax Board* (1984) 161 Cal.App.3d 1036, 1039 [208 Cal.Rptr. 74].)

■ A tax credit is a direct dollar-for-dollar reduction of the amount of tax owed by a taxpayer. Subject to certain conditions which are not in dispute in this case, "nonresidents [of California] shall be allowed a credit against the taxes imposed by this part [Personal Income Tax] for net income taxes imposed by and paid to the state of residence on income taxable under this part." (Rev. & Tax. Code, § 18002.)[1] In other words, a nonresident subject to tax on California-source income is allowed a credit against his or her California tax liability for *net income taxes* imposed by and paid to his or her state of residence on the California-source income. The purpose of a credit for taxes paid to another state on income derived in this state is the prevention of double taxation. (See *Henley* v. *Franchise Tax Board* (1953) 122 Cal.App.2d 1, 5 [264 P.2d 179].) ■ Here, it is undisputed that taxpayers paid to Connecticut the tax imposed by Connecticut pursuant to section 12-506 of the Connecticut General Statutes (hereafter section 12-506) on the California-source capital gain income here at issue. Thus, the sole question on appeal is whether section 12-506 imposes a "net income tax" within the meaning of Revenue and Taxation Code section 18002, entitling taxpayers to a credit against their California nonresident income tax liability.

For the tax periods in question, Connecticut did not have a comprehensive personal income tax. In 1971, Connecticut enacted a permanent personal

---

[1]Subsequent to the tax years in question, Revenue and Taxation Code section 18002 was amended. (Stats. 1988, ch. 1465, § 12, eff. Sept. 28, 1988; Stats. 1989, ch. 362, § 6; Stats. 1990, ch. 1349 (Sen. Bill No. 1925), § 9, eff. Sept. 26, 1990.)

income tax on dividends and capital gains. Other types of income such as interest, rent, and wages were not taxed. Section 12-506 imposed a tax on all dividends earned and on all net gains from the sale or exchange of capital assets. " '[G]ains from the sale or exchange of capital assets' means (A) net gain as determined for federal income tax purposes, after due allowance for losses and holding periods, (1) from sales or exchanges of capital assets . . . , or (2) from transactions or events taxable to the taxpayer as such sales or exchanges, and being the net amount includable in the taxpayer's adjusted gross income . . . under the provisions of the Internal Revenue Code . . . and (B) net gains from sales or exchanges of certain depreciable property . . . ." (Conn. Gen. Stat., § 12-505.)

Section 12-506, imposing tax on capital gains, incorporates and adopts the federal income tax law on capital gains. Thus, net gains under section 12-506 are to be computed taking into account federal basis provisions and deductions for long-term capital gains. Further, where capital losses exceed capital gains in one year, the taxpayer will not have a taxable net gain for Connecticut income tax purposes. Capital losses do not offset dividend income. (*Kellems* v. *Brown* (1972) 163 Conn. 478 [313 A.2d 53, 73].) However, capital losses may be carried over to future years. (*Ruskewich* v. *Com'r of Revenue Services* (1989) 213 Conn. 19 [566 A.2d 658, 662].) While the tax on dividends is a gross receipts tax under Connecticut law, the capital gains tax is imposed only on net capital gains. (*Yaeger* v. *Dubno* (1982) 188 Conn. 206 [449 A.2d 144, 147].) The capital gains tax is also subject to certain income limitations and exemptions for aged and blind taxpayers. (Conn. Gen. Stat., §§ 12-506, subd. (b), 12-506c, 12.506f.)

No California appellate decision has determined whether the Connecticut capital gains tax is a net income tax for purposes of Revenue and Taxation Code section 18002. Indeed, no California appellate decision interprets section 18002 in any manner. California cases, however, have interpreted the similar net income tax credit provision of Revenue and Taxation Code section 18001, which is applicable to residents.[2] The cases interpreting section 18001 have not considered the Connecticut capital gains tax in question, but concern whether a Canadian tax on nonresident dividend income and trust distribution income is a net income tax. Those cases hold that where a tax is on the gross amount of the money received without deduction, credit, or exemption, the tax is a gross income tax and not a net

---

[2]For the tax years in question, Revenue and Taxation Code section 18001 provided in pertinent part: "[R]esidents shall be allowed a credit against the taxes imposed by this part [personal income tax] for net income taxes imposed by and paid to another state on income taxable under this part . . . ."

income tax within the meaning of section 18001. The cases also hold that where the distributing entity (corporation, trust) is a separate taxable entity, the fact that the distributing entity is entitled to deductions, credits, and exemptions does not affect the characterization of the tax on the distribution as a gross receipts tax.[3] (*Burnham* v. *Franchise Tax Board* (1959) 172 Cal.App.2d 438 [341 P.2d 833]; *Clemens* v. *Franchise Tax Board* (1959) 172 Cal.App.2d 446 [341 P.2d 838]; *Crocker-Anglo Nat. Bank* v. *Franchise Tax Board* (1960) 179 Cal.App.2d 591 [3 Cal.Rptr. 906]; cf. *Burgess* v. *State of California* (1945) 71 Cal.App.2d 412 [162 P.2d 855]; *Henley* v. *Franchise Tax Board, supra,* 122 Cal.App.2d 1.)

Unfortunately, these cases are not particularly helpful to the resolution of the issue in this case. A net capital gains tax is not similar or analogous to a tax on the gross amount of dividends or trust distributions received by a taxpayer. We are aware of no California appellate cases concerning the characterization of a capital gains tax as either a net income, a gross income or gross receipts tax. We are also unaware of any decisions on this issue rendered by any other state courts.

Net income tax is not defined for purposes of credits for out-of-state taxes paid, or for any other purpose in the Personal Income Tax Part of the Revenue and Taxation Code. Nor is net income defined in the Personal Income Tax Part of the Code. However, net income is defined in section 24341 of the Bank and Corporation Tax Part of the Revenue and Taxation Code as "gross income . . . less . . . deductions . . . ." In addition, another definition in the Revenue and Taxation Code may be helpful in resolving this issue. ■ At the time in question, Revenue and Taxation Code section 17071 defined gross income to include "[g]ains derived from dealings in property."[4] Gain derived from dealings in property is the excess of the sale price of the property over its cost. (*Holmes* v. *McColgan* (1941) 17 Cal.2d 426, 429 [110 P.2d 428].)

An argument could be made that all capital gains taxes are net income taxes, because the tax is not imposed on the gross receipts, i.e., gross proceeds from the sale, but rather on the excess of the sale price over the cost. That argument, however, does not appear to be consistent with the Revenue and Taxation Code, which defines "gross income" as including the gain from the sale of capital assets, i.e., the excess of the sale price over the cost. ■ Generally, a tax is a gross income tax if it is imposed on the excess of the sales price over the cost of goods sold. (*MCA, Inc.* v. *Franchise Tax Board* (1981) 115 Cal.App.3d 185, 197 [171 Cal.Rptr. 242].) A gross income tax is distinguishable from a gross receipts tax because a return of

---

[3] A partnership is not a separate taxable entity.
[4] Subsequently, section 17071 was amended to define gross income as it is defined in section 61 of the Internal Revenue Code. (Stats. 1983, ch. 488, § 22, eff. July 28, 1983.)

capital is excluded from gross income, while gross receipts may include income as well as return of capital. (*Robinson* v. *Franchise Tax Board* (1981) 120 Cal.App.3d 72, 78 [174 Cal.Rptr. 437].) A tax which is not a gross *receipts* tax may be a gross *income* tax. Thus, we cannot reasonably conclude that a capital gains tax is necessarily a net income tax.

 If a capital gains tax is not always a net income tax, the question then becomes whether it may be a net income tax under appropriate circumstances. Specifically, we must determine whether a capital gains tax is converted from a gross income tax to a net income tax where capital losses may be deducted from capital gains, where unused capital losses could be carried over for deduction to subsequent tax years, and where deductions are allowed for holding periods as well as certain personal exemptions. We conclude that it is.

Frequently, taxing systems are established which differentiate between ordinary income and capital gains. During the years in issue, California taxed ordinary income, i.e., dividends, rents, interest, wages, etc., separately from capital gains or losses. Capital gains were entitled to deductions depending on the taxpayer's holding period of the asset. Capital losses offset only capital gains and not ordinary income, although small amounts of capital losses were permitted to offset ordinary income. (Rev. & Tax. Code, § 18152, subd. (a).)[5] Unused capital losses could be carried forward as deductions to subsequent tax years. (Rev. & Tax. Code, § 18152, subd. (d).)

In this respect, Connecticut's tax scheme is similar to California's. Although Connecticut taxes only one category of ordinary income, i.e., dividends, while California has a comprehensive personal income tax,[6] both states treat ordinary income separately from capital gains. In both states, deductions are allowed depending on the length of the holding period. Both states allow deductions for capital losses. In both states, where capital losses exceed capital gains, taxpayers are not subject to tax on the capital gains, unused capital losses may be carried forward for deduction to subsequent years and capital losses may not be used to offset ordinary income.

The Board contends that Connecticut's income tax cannot be a net income tax, because a taxpayer may be subject to tax even if the taxpayer has no net income for the year. For example, a Connecticut taxpayer who suffers a $1 million loss from his business in the same year that he realizes a $1 million

[5]An ordinary loss offsets a net capital gain.

[6]We do not find persuasive the Board's argument that a state must adopt a comprehensive personal income tax in order for a tax to be creditable against California tax. (See *Robinson, supra,* 120 Cal.App.3d at pp. 80-81.)

net gain from the sale of a capital asset would be subject to tax on the capital gain, even though the taxpayer actually had no net income for the year. We agree with the Board that such a result is mandated by the Connecticut income tax provisions. However, we do not agree that such a result precludes a conclusion that the Connecticut income tax on capital gains income is a net income tax.

As a general rule, we would agree that a net income tax is one which taxes the net income of a taxpayer. Generally, under a net income tax, if a taxpayer has no net income, the taxpayer will suffer no tax. Such a general rule, however, does not preclude the establishment of separate taxing procedures for ordinary income and capital gains income, which may result in a tax on one category of income even where the taxpayer has suffered an overall net loss for the year. The nature of the tax is determined by reference to the nature of the income taxed. A tax law may be in part a gross receipts tax, in part a gross income tax, and in part a net income tax. (*Robinson, supra,* 120 Cal.App.3d at pp. 80-81.)

It is undisputed that California has a net income tax. Yet in California, a taxpayer who has suffered a $1 million capital loss and earns $1 million in ordinary income must pay tax on the ordinary income with only a minimal offset ($3,000) for the capital loss. Thus, such a California taxpayer is subject to a California net income tax, even though the taxpayer has no net income.

We conclude that Connecticut's tax on "net gains" from the sale or exchange of capital assets under section 12-506 is a "net income tax" within the meaning of Revenue and Taxation Code section 18002. The Connecticut capital gains provisions tax net capital gains after allowing deduction for capital losses, holding periods, and personal exemptions. Accordingly, the trial court properly determined that the taxpayers, as nonresidents, were entitled to a credit against their 1979 and 1980 California income taxes pursuant to section 18002 for the taxes paid to Connecticut on the California-source capital gains. Such a conclusion not only is consistent with the language of the statute but also effectuates the purpose of section 18002, which is to avoid the double taxation which would otherwise occur in this case.

## DISPOSITION

The judgment is affirmed. The Board shall pay taxpayers' costs on appeal.

Turner, P. J., and Boren, J., concurred.